Argued December 21, 1897; decided February 7, 1898.

CITY OF PORTLAND v. MEYER.

[52 Pac. 21.]

1. MUNICIPAL CORPORATIONS — REGULATION OF SLAUGHTER HOUSES.— Where a municipality has under its charter power to provide for the exclusion of slaughter houses from the city, it may enact an ordinance prohibiting the further use of such establishments, though they were already in operation when the ordinance was passed.

2. CONSTITUTIONAL LAW — EXERCISE OF POLICE POWER.— A proprietor of a slaughter house within the limits of a city has no constitutional right to be unmolested, and if the city decides that the business is not being properly conducted, or that its further continuance at all is injurious, he must submit.

From Multnomah: THOS. A. STEPHENS, Judge.

H. Meyer was convicted of violating an ordinance of the City of Portland prohibiting the maintenance of any slaughter houses within the corporate limits.

AFFIRMED.

*Messrs. Paxton & Beach* for appellant.

*Mr. Wm. M. Cake,* city attorney, for respondent.

Mr. Justice Bean delivered the opinion.

By subdivision 23 of section 35 of the charter of the City of Portland (Laws, 1893, 822) the council has power and authority "to license, tax, control and regulate slaughter houses  *  *  *  and to provide for their exclusion from the city limits or any part thereof." In January, 1894, while this provision of the charter was in force, the defendant erected or caused to be erected a slaughter house within the corporate limits of the city, and in September following the council passed an ordinance making it unlawful for any person to maintain such a structure therein. For a violation of this ordinance by the maintenance of his previously established slaughter house the defendant was arrested in October, 1894, and having been convicted brings the cause here for review.

The only question for determination is whether the provisions of the charter quoted confer upon the city power to prohibit the use of slaughter houses established and in operation at and prior to the passage of an ordinance for that purpose. It is not claimed that the power to license, tax, regulate and control slaughter houses will support such legislation, but the contention of the city is that the power is to be found in the authority "to provide for their exclusion from the city limits," while the defendant's position is that the power of exclusion so conferred was intended to enable the council to prevent the future erection of slaughter houses, and not to put an end to an existing business of that kind. This is the point of contention between the parties to this litigation.

1.   In construing a statute words of common use are ordinarily to be taken in their natural, plain and obvious signification, and, in view of this rule, we are of the opinion that the power of exclusion as given by the charter is broad enough to authorize the city to prevent the maintenance of slaughter houses already in existence, and to punish offenders against the ordinance therefor.   The word "exclusion" is defined by Webster as "the act of excluding or shutting out, whether by thrusting out or by preventing admission; a debarring; rejection; prohibition"; and by the Century as "the act of excluding or shutting out"; and, also, "the act of thrusting out or expelling; ejection; extrusion."   It will thus be seen that the commonly accepted meaning of the word is not only the act of shutting out, but also the act of thrusting out, and there is nothing in the city charter to indicate that it was intended to be used in any other sense.   "The regulation of the place and manner of conducting the slaughtering of animals, and the business of butchering within a city, and the inspection of the animals to be killed for meat, and the meat afterwards," was said by Mr. Justice MILLER in the *Slaughter House Cases*, 83 U. S. (16 Wall.) 62, to be among the most necessary and frequent uses of the police power of the state.   And it was the evident purpose of the legislature to give the City of Portland full power and control over the matter.   It was, therefore, authorized to regulate and control slaughter houses, if deemed advisable to permit them to exist within the corporate limits, or prohibit their maintenance altogether, whenever, in the opinion of the council, the public welfare

requires their exclusion. The whole question was relegated to the city, and the power conferred is sufficient to enable it to prohibit the maintenance of slaughter houses already in existence as well as to prevent their future erection.

2. And neither the charter nor the ordinance in question is violative of any constitutional right of the defendant: *Ex parte Heilbron*, 65 Cal. 609 (4 Pac. 648); *Mugler* v. *Kansas*, 123 U. S. 623 (18 Sup. Ct. 273); *Fertilizing Company* v. *Hyde Park*, 97 U. S. 659. The fact that the enforcement of the ordinance will prevent him from using the building and machinery erected for slaughter house purposes is no defense to this proceeding. It is true that at the time it was erected the law did not forbid the slaughtering of animals or the maintenance of a slaughter house within the city, but the law-making power did not thereby come under any obligation or give any assurance that the legislation upon the subject would remain unchanged. Indeed, the supervision of the public health and public morals is a governmental power which cannot be bartered away either directly or indirectly: *Beer Company* v. *Massachusetts*, 97 U. S. 25; *Stone* v. *Mississippi*, 101 U. S. 814. We are, therefore, of the opinion that the ordinance is valid, and the judgment of the court below must be affirmed.

AFFIRMED.