Argued 24 October, decided 17 December, 1907.

## FISHBURN *v.* LONDERSHAUSEN.

92 Pac. 1060, 14 L. R. A. (N. S.) 1234.

ATTACHMENT—PROPERTY SUBJECT—BILLS AND NOTES.

1. Sections 299-302, B. & C. Comp., provide in effect that all property not exempt from execution shall be subject to attachment, and that personal property capable of manual delivery, and not in possession of a third person, shall be attached by the sheriff taking it into his possession, and garnishment proceedings are provided to reach personal property not capable of manual delivery and in possession of a third person. Section 4586 defines a negotiable promissory note as an unconditional promise in writing engaging to pay on demand, or at a fixed or determinable time, a certain sum in money. *Held*, that a negotiable promissory note belonging to defendant, in his possession, and bearing no indorsements, was subject to attachment and sale under execution.

WORDS AND PHRASES—"PROPERTY."

2. "Property" means everything of exchangeable value, and includes money, chattels, things in action, and evidence of debt. This also is recognized as including things which may be sold and that may be assessed for taxation.

BILLS AND NOTES—ACTION BY HOLDER.

3. Under Section 4453, B. & C. Comp., authorizing the holder of a negotiable
instrument to sue thereon in his own name, where a note belonging to defend-
ant was attached and sold under execution, the purchaser might sue thereon
in his own name, irrespective of whether the indorsement by the sheriff to
him was regular or irregular.

JUDGMENT—PRESUMPTION IN FAVOR OF.

4. Every presumption will be given to proceedings in a court of general
jurisdiction necessary to support the validity of its judgments and decrees,
when the court is proceeding according to the common law.

PLEADING—DEMURRER—CONSTRUCTION OF PLEADING.

5. A complaint, when tested by a demurrer, must be construed most
strongly against plaintiff.

JUDGMENT—PLEADING JUDGMENT—SERVICE BY PUBLICATION.

6. Section 56, B. & C. Comp., provides that, in case of service of process by
publication, a copy of the summons shall be deposited in the postoffice,
directed to the defendant at his last known postoffice address. *Held,* that
where, in an action on a note purchased by plaintiff at a sale under execution,
based on a judgment in an attachment suit against the owner of the note, the
complaint alleged service by publication in the action against the owner of
the note and his default, but failed to show that a copy of the summons was
deposited in the postoffice directed to defendant at his last known postoffice
address, and no reason was given for failure to meet such requirement, and it
did not appear that due diligence had been used to ascertain defendant's
whereabouts, the complaint was insufficient to show jurisdiction.

APPEAL—DISPOSITION OF CAUSE—PROCEEDINGS IN TRIAL COURT.

7. Where on appeal it was found that the trial court acted properly in sus-
taining a demurrer to the complaint, the cause would be remanded for further
proceedings, within the discretion of the trial court.

From Yamhill: GEORGE H. BURNETT. Judge.

A demurrer to the complaint having been sustained, judg-
ment was rendered in favor of defendant, from which plaintiff
appeals.

AFFIRMED AND REMANDED FOR FURTHER PROCEEDINGS.

For appellant there was a brief over the names of *Roswell L.
Conner* and *S. H. Gruber,* with an oral argument by *Mr. Conner.*

For respondent there was a brief over the names of *McCain &
Vinton,* with an oral argument by *Mr. James McCain.*

Statement by MR. COMMISSIONER KING.

This is an action by J. W. Fishburn, as trustee, against G.
B. Londershausen and S. Londershausen on a negotiable prom-
issory note for $200, with interest, executed to and made pay-
able to the order of the State Savings Bank of Dayton, Oregon,

on February 17, 1904, due six months after date. The complaint was filed September 14, 1904, and, after setting out the note in full and alleging its execution, avers, in substance: That from February 9 to March 9, 1904, the State Savings Bank of Dayton, Oregon, was owned, managed and controlled by one Arthur C. Probert; that on March 9th of that year Probert absconded, leaving no person in charge of the bank, and left the said note, together with other property, locked up therein; that at the time of his disappearance he left many debts due to divers persons, including one J. G. Lewis, who had a claim against him for money deposited in his bank, for the recovery of which he brought an action against him in the circuit court for Yamhill County, and at the same time had a writ of attachment issued, in which the note here involved, with other property, was attached by the sheriff seizing and taking the same into his custody, which said officer thereafter, prior to its maturity, sold the same on execution to satisfy the judgment obtained therein, at which sale this plaintiff became the purchaser thereof. The complaint purports to give all the proceedings leading up to and including the service of summons, which was by publication, together with the entry of judgment, and sale of the attached note, as well as its delivery to plaintiff, among which appears the following allegation:

"That on the ——— day of March, 1904, the said sheriff of Yamhill County, Oregon, returned said summons to the clerk of said circuit court of Yamhill County, Oregon, with his return indorsed thereon, duly certifying that he had made diligent search and inquiry for said defendant, Arthur C. Probert, and that said defendant, after due diligence, could not be found within the State of Oregon, and on the 30th day of March, 1904, it satisfactorily appearing to Hon. Geo. H. Burnett, judge of said Circuit Court of the State of Oregon for Yamhill County, by the affidavit of said J. G. Lewis, plaintiff in said action, that personal service of said summons could not be made upon said defendant, Arthur C. Probert, within the State of Oregon, and that a cause of action existed against said defendant and in favor of said plaintiff, that said defendant was not a resident of the State of Oregon, but then had property therein, which

had been duly attached in said action, and that said court had jurisdiction over such property and of the subject of said action; said Geo. H. Burnett, as such judge, and on said day, duly made and granted an order, in said action, that service on said summons be made upon said defendant, Arthur C. Probert, by publication thereof in the Yamhill County Reporter, a newspaper published weekly at McMinnville, Yamhill County, Oregon, and having a general circulation, by publishing same once a week for six consecutive weeks."

This is followed by averments showing a full compliance with the requirements of the order referred to in the foregoing paragraph, and, among other things, that at the time of the attachment and the taking of the note into custody by the sheriff, and sale thereof, it was the property of Arthur C. Probert, and in his bank, which bank he had apparently deserted; that plaintiff, J. W. Fishburn, as trustee, purchased the note at the execution sale resulting from the attachment proceedings, for a valuable consideration, and at the time of the filing of this action was the owner and holder thereof; that this note was free from any liens; and that the same was due and unpaid. A demurrer to the complaint was filed on the ground that it did not state sufficient facts to constitute a cause of action. The demurrer was sustained, and, plaintiff declining to further plead, judgment was accordingly entered dismissing the complaint and for costs and disbursements, from which this appeal is taken.

                    AFFIRMED AND REMANDED.

Opinion by MR. COMMISSIONER KING.

The points for determination are: (1) Is a negotiable promissory note, when found in the possession of its owner, and free from any liens, subject to attachment and sale under execution? (2) Does it appear from the complaint that, in the action between Lewis and Probert, there was sufficient compliance with the statutory requirements relative to service of summons to give the court jurisdiction to enter the judgment and order the sale of attached property?

1. In support of the first point, it is urged that the complaint is insufficient, in that it there appears that the note came

into plaintiff's possession through attachment proceedings and the execution sale based thereon; that no provision is made by the statute for the attachment of negotiable promissory notes, and proceedings had in reference thereto are therefore void. The statute bearing on the question provides, in effect, that all · property in this state, not exempt from execution, shall be subject to attachment; that the writ of attachment shall be directed to the sheriff of the county in which the property of the defendant may be situated, requiring him to attach and safely keep any property of the defendant, not exempt from execution, sufficient to satisfy plaintiff's demands; and that personal property capable of manual delivery, and not in the possession of a third person, shall be attached by the sheriff taking it into his possession, from which time until the writ is executed the plaintiff, as against third persons, shall be deemed a purchaser in good faith: B. & C. Comp. §§ 299, 300, 301, 302. The complaint discloses that, at the time of the attachment, Arthur C. Probert was the sole owner and holder of the note involved, and that at the time of the levy it was not in the possession of any third person, but in the bank of which Probert was not only the sole owner, but the only one entitled to have charge thereof. The question as to the right to levy upon a negotiable promissory note and sell it under an execution issued for the sale of attached property has not heretofore been directly before this court; and all the authorities to which we have been referred, with but one exception, are from states where the codes in force at the time the decisions were rendered expressly included promissory notes with other kinds of property subject to levy and sale. That the right of attachment is not a common-law remedy, but must depend upon the statute of the state where invoked, is too well settled to admit of serious doubt, nor do we understand it to be questioned here; the contention by plaintiff being that the word "property," as used in our code, when indicating what may be levied upon, includes notes, while defendants insist that notes are neither expressly nor impliedly made the subject of attachment or sale. The effect, therefore, to be given

to the provisions of the statute upon the subject, depends upon the construction to be placed upon the word "property"; that is to say: Does the code, by the use of the words "property" and "personal property," include negotiable promissory notes? In this connection it must be remembered that a special procedure is provided by Section 301, subd. 3, supra, under which personal property, not capable of manual delivery and in the possession of third persons, may be reached, commonly known as garnishment proceedings; but this process is limited to property not in the possession of the defendant, from which it follows that this note, having been found in defendant's possession, if attachable at all, must be reached by the sheriff taking it into his custody, as provided in subdivision 2 of Section 301 of the statute.

2. "Property" is defined as "the right and interest which a man has in lands and chattels to the exclusion of others" (2 Bouvier, Law Dict. p. 780); and "personal property" as being any right or interest which a man may have in things movable, and "includes money, chattels, things in action, and evidence of debt": 2 Bouvier, Law Dict. p. 662; *McLaughlin* v. *Alexander,* 2 S. D. 226 (49 N. W. 99); *Streever* v. *Birch,* 62 Hun, 298 (17 N. Y. Supp. 195). The word "property" is the most comprehensive of all terms which can be used, as it "is indicative and descriptive of every possible interest which the party can have": 3 Stroud, Jud. Dict. (2 ed.), p. 83; *McLaughlin* v. *Alexander,* 2 S. D. 226 (49 N. W. 99). It means everything of exchangeable value: 6 Words & Phrases, p. 5694. In *Willis* v. *Marks,* 29 Or. 493 (45 Pac. 293) it is held that a claim against an estate, verified by the original claimant and assigned to a third party, is such evidence of indebtedness as to lend to it the character of property and subject it to an action in replevin. Much stronger, then, is the reason for holding a negotiable promissory note to be personal property, which is defined by our statute (B. & C. Comp. § 4586) as "an unconditional promise in writing made by one person to another, signed by the maker, engaging to pay on demand, or at a fixed or determinable future time, a sum certain in money to order

or to bearer." .The advantage therefore of such instrument over a mere verified and unapproved claim, not only in value and convenience, but as to its usefulness in commerce, is too apparent to admit of discussion, and, under the decisions cited, such instrument cannot escape being classed as property and as coming clearly within the meaning of the term as used in the statute. Tiedeman, Com. Paper, § 251, construes the words "personal property," as used here, to include promissory notes, stating: "An attachment of commercial paper is also held to be permissible under a general authority to attach all kinds of property, in Oregon, Texas, New Hampshire and Wisconsin, and perhaps in other states." The statement quoted refers to no authorities in its support, but is given as the construction placed by the author upon the term "property," as used in the statute relative to attachment.

Property is recognized as including things which may be sold and that may be assessed for taxation. The Constitution of Louisiana (1868, Art. 118) provides, *inter alia,* that "all property shall be taxed in proportion to its value." When the effect of this provision was under discussion in the case of *City of New Orleans* v. *Mechanics' & Traders' Ins. Co.* 30 La. Ann. 876 (31 Am. Rep. 232), it was urged that "credits," including promissory notes, were not property within the meaning and intent of that article, and, accordingly, that the legislature had no authority to impose a tax upon them. The court, in passing upon the point, held promissory notes to come within the meaning of the word "property" and subject to taxation, and observed: "The argument by which it is attempted to be shown that notes, bills, bonds, stocks, etc., are not property, is too sublimated and metaphysical to be practical in matters of legislation. . If they are not property, they represent value and produce revenue. But to say that our constitution forbids them to be considered as property would be to expunge from our codes provisions and principles that are as old as the civil law. * * They are classed as 'things,' may be bought, sold, appraised, seized, and make up and constitute the wealthiest patrimonies

in the world. Is it not rational, in seeking the meaning of the word 'property' in the Constitution of 1868, that we ascertain what has always been its acceptation in our law, in our jurisprudence, and by common usage? And when we ascertain that, from time immemorial, 'incorporeal things' of the kind in question have been held and treated as embraced in the term 'property,' shall we turn our back on all this and run away after the metaphysical abstraction that 'property is always and of necessity a physical actuality'? It is our duty to interpret words in a statute 'in their ordinary and usual signification,' as they are 'popularly used': C. C. 14." See, also, *Poppleton v. Yamhill County,* 8 Or. 337; *Crampton v. Newton's Estate,* 132 Mich. 149 (93 N. W. 250); *Barton v. Barton,* 32 Md. 214. In construing statutory words of common use, the same rule as there invoked has also been recognized in this state: B. & C. Comp. § 706; *City of Portland v. Meyer,* 32 Or. 368 (52 Pac. 21: 67 Am. St. Rep. 538).

Prior to 1862, the provisions of the statutes of Minnesota (sections 139, 140, Stat. 1851) relative to attachment were, in substance, the same as Sections 300 and 301, B. & C. Comp.; the only material difference being that the clause, "and not in the possession of a third person," of Section 301, B. & C. Comp., was not contained therein. The question as to the right to attach promissory notes, under the sections of the Minnesota statute then in force, by the sheriff taking the instruments into his custody and selling the same on execution, as with other property, came squarely before that court in the case of *Mower v. Stickney,* 5 Minn. 397 (Gil. 321); and in passing upon the question the court say: "Promissory notes under our statute are property, and, when they can be reached, are subject to attachment and execution, as any other species of property." The court further observes, in effect, that the holder of the note has an interest equal to its value, and that no reason appears why such interest is not subject to levy and sale upon execution. Our attention has not been directed to any other authorities, nor have we found another, in which the right to attach

promissory notes under similar statutory provisions has been considered; but we believe the interpretation given by the Minnesota supreme court to be sound and in harmony with the rule recognized in *City of Portland* v. *Meyer,* 32 Or. 368 (67 Am. St. Rep. 538: 52 Pac. 21), that, "in construing a statute, words of common use are ordinarily to be taken in their natural, plain and obvious signification." Nor can we conceive of any reason why the attachment of negotiable instruments as here levied upon should not be permitted. The note being in the possession of defendant at the time of the levy, without indorsements of any kind, and his individual property, no third party could have been inconvenienced in the least or in any manner injured by its attachment and sale. It is obvious that, in specifying the class of property subject to attachment, by the sheriff taking the same into his custody, the statute was intended to include instruments of this character. Counsel for defendant insists that *Mower* v. *Stickney,* 5 Minn. 397 (Gil. 321), is not in point, for the reason that Minnesota has a statute designating promissory notes to be within the class of property subject to attachment by levy and sale, which is true; but the provisions referred to first appeared in the code of that state in 1866, after the decision in *Mower* v. *Stickney,* which was rendered under the code of 1858, when the sections relative to attachment by levy and sale on execution were the same in Minnesota as now in this state, as above indicated.

3. Under the averments of the complaint, the proceedings under the entry of judgment in favor of Lewis, including the sale of the note involved, were regular, and, so far as those proceedings were concerned, conveyed to plaintiff a good and sufficient title to the note, and whether the indorsement by the sheriff to plaintiff was regular or irregular is immaterial, as plaintiff received the note under his purchase, and, whether it was indorsed or not, he is entitled, as the owner thereof, to sue in his own name (B. & C. Comp. § 4453), subject only to the exception that if it appears that the court did not have jurisdiction to enter the judgment, upon which the order of the sale

was made, and under which the plaintiff came into possession of the note, the proceeding would be void, and he could not maintain action. On this point it is maintained that the allegation in the complaint, from which we have hereinbefore quoted, fails to aver that the order of the court directed the plaintiff to deposit a copy of the summons and complaint in the post office, postage prepaid, directed to his last known address, in response to which our attention is called to the following averment in the complaint:

"That on the 23d day of May, 1904, it satisfactorily appearing to the circuit court of Yamhill County, Oregon, from proofs then had and taken in open court, that service of said summons had been duly and regularly made and had upon said defendant, Arthur C. Probert, by publication thereof, in all things as by law in such cases provided and required, said defendant having not appeared and answered or otherwise pleaded to plaintiff's said complaint, but having made default, and continuing to make default, the default of said defendant was then duly entered, and thereupon, and on said 23d day of May, 1904, said plaintiff, J. G. Lewis, duly recovered judgment against said defendant, Arthur C. Probert, in said Circuit Court of the State of Oregon for Yamhill County, in said action for the sum of $2,197.82, with interest thereon at the rate of 6 per cent per annum from March 4, 1904, until paid, for the costs and disbursements of said action taxed at $86.80, together with an order of said court ordering and directing that said personal property belonging to said defendant, Arthur C. Probert, and attached in said action, including said promissory note above described, be sold to obtain funds with which to satisfy said judgment; said judgment being in all respects duly made, given and entered, and on said 23d day of May, 1904, duly docketed and entered in said court, in all things as by law in such cases required and provided."

4. In respect to this paragraph, counsel for plaintiff argues that it, together with other facts alleged, is sufficient to bring the case within the rule announced in *Rutenic* v. *Hamaker*. 40 Or. 444 (67 Pac. 196), in which it is held that, in a court of general and superior jurisdiction, every fact necessary to confer jurisdiction will be presumed, in order to support the validity of the judgment. As it is not necessary to allege facts

which the court will presume, it was not required that plaintiff
in this case should set out all the facts essential to the confer-
ring of jurisdiction in the case of *Lewis* v. *Probert,* through
which plaintiff claims title to the note sued upon.  As announced
in *Rutenic* v. *Hamaker,* 40 Or. 444 (67 Pac. 196), there can
be no question but that every presumption will be given to the
proceedings in a court of general jurisdiction, necessary to sup-
port the validity of its judgments and decrees, when such court
is proceeding according to the course of the common law, for
which reason it was not incumbent upon plaintiff to have al-
leged that the court had jurisdiction, either of the person of the
defendant or the subject-matter of the action, or to allege the
facts conferring the jurisdiction, although necessary to aver that
the court was one of general jurisdiction, describing it in such
terms that this fact may appear as a necessary inference, and
that judgment was obtained therein, and leave the defendant to
plead and prove a want of jurisdiction, if he can: 2 Black,
Judgments (2 ed.), § 873; *Pennington* v. *Gibson,* 57 U. S.
64 (14 L. Ed. 847) ; *Jarvis* v. *Robinson,* 21 Wis. 530 (94 Am.
Dec. 560).

But plaintiff, in his complaint, purports to give in detail all
the facts leading up to the judgment and sale upon which the
statement that the judgment was duly recovered and in all
respects duly made, etc., is based; and, having elected to adopt
this manner of pleading, it must be complete, and state all the
facts necessary to give jurisdiction, under the rule that, where
the pleading points out the particular manner of service of a
summons and facts relied upon to confer jurisdiction, if the
mode designated falls short of all the statutory requirements,
proof cannot aid the averments: *Heatherly* v. *Hadley,* 4 Or. 1;
*Northcut* v. *Lemery,* 8 Or. 316.  Since the method of pleading
the jurisdictional facts has been used, it becomes necessary to
examine into what purports to be the averments relative thereto,
in order to determine whether sufficient facts appear to have
given the court jurisdiction to enter the judgment, under which
the sale of the note, purchased by plaintiff, was made.  In this

respect the same test must be applied to the pleading of the record as may be used to determine the sufficiency of the record itself; that is, when the record or pleading, as the case may be, recites what was done, and the facts recited are insufficient to give the court jurisdiction, the omission thereof in either event is fatal to the cause of the person relying upon such record or pleading: *Tustin* v. *Gaunt*, 4 Or. 305.

From the complaint it appears that service of summons was made upon the defendant in the action of *Lewis* v. *Probert* by publication for six consecutive weeks in the Yamhill County Reporter, a newspaper of general circulation in the state; but nowhere is it manifested that a copy of the summons was immediately thereafter, or at any time, deposited in the post office, directed to the defendant at his last known post office address, or that an order was made to that effect, as required by B. & C. Comp. § 56. Nor is any reason for the failure to meet this requirement given. This brings the case clearly within the rule announced and recognized in the well-considered opinion of *Odell* v. *Campbell*, 9 Or. 298, in which all these features are fully discussed, and law relative thereto clearly stated. In that case, it appeared that the defendant could not be found in this state; that a cause of action existed against him, for which reason it was ordered that service be made on the defendant therein by publication of the notice for six consecutive weeks in the Oregon Statesman newspaper, but failed to direct a copy of the summons and complaint to be deposited in the post office, addressed to defendant at his place of residence; nor did the reason appear in the order, or the fact in the record, for this omission. In discussing this feature, Chief Justice LORD observes:

"The language of the statute is explicit. It requires that a copy of the summons and complaint must not only be deposited in the post office, but that it must be done forthwith, or the facts excusing the omission must appear to meet the requirements of the statute. If, for insance, the order, in addition to the facts stated as 'appearing to the judge,' had recited that 'the residence of the defendant is unknown to the affiant, and cannot, with reasonable diligence, be ascertained by him,' then the reason

for the omission, or the fact excusing the direction of deposit in the post office, would be disclosed upon the face of the record. Such an order, reciting the facts which did appear to the satisfaction of the judge, discloses affirmatively the authority of the court to exercise its extraordinary jurisdiction. But when the order of the court omits to direct a deposit in the post office, and there is nothing in the record, or in the facts recited in the order, to excuse such omission, the requirements of the statute are not complied with by mere publication. The statute contemplates, if possible, that actual notice shall be had of the pendency of the action. Deposit in the post office, directed to the residence of the defendant, would be much more likely to notify him of the pendency of the action than publication of the summons in a newspaper, however general its circulation. The reason of this direction of the statute is founded in a just regard for the rights of absent defendants, and as an additional precaution to prevent the injustice of condemning any man unheard, or without his day in court. It is not sufficient that the residence of the defendant is unknown, but it must also appear that it cannot, with reasonable diligence, be ascertained, to excuse the omission to direct the deposit in the post office. The order is an essential part of proceedings of this character, and necessary to show jurisdictional facts, without which the judgment will be a nullity. The importance, then, and the necessity of the order bearing upon its face the necessary statutory requirements, becomes evident. It must not only direct the publication in a paper designated, and for the period prescribed, but it must do more. The statute requires that it must direct a copy of the summons and complaint to be forthwith deposited in the post office, directed to the defendant at his place of residence, or the facts excusing the omission to make such direction of deposit must appear, or the order allowing service by publication, and the service and judgment following it, will be void."

5. The consequence of these allegations cannot be avoided on the ground that the judgment of a court of general jurisdiction is presumed regular, or on the presumption that there are any other or different records than those shown by the complaint. The complaint, when tested by demurrer, must be construed most strongly against the plaintiff (*Patterson* v. *Patterson*, 40 Or. 560: 67 Pac. 664), and the presumptions applicable to judgments in courts of general jurisdiction are applicable only

where the court is proceeding according to the course of the common law, and not where the jurisdiction has been acquired in some special manner prescribed by the statute. True, in the absence of anything in the record to the contrary, it will be presumed that service was properly had, and that the defendant appeared in person, if necessary; but when it is made to appear that the judgment was had upon a substituted service, and not upon proceedings according to the course of the common law, nothing will be presumed, but every fact necessary to give jurisdiction must affirmatively appear: *Odell* v. *Campbell,* 9 Or. 298. The following words by Mr. Justice Field (*Galpin* v. *Page,* 3 Sawy. 93: Fed. Cas. No. 5,206) are quoted with approval in the case last cited:

"These qualifications and exceptions arise where the proceedings, or the party against whom they are taken, are without the ordinary jurisdiction of the court, and can only be brought within it by pursuing special statutory provisions. * * When, therefore, the record states the evidence or makes an averment with reference to a jurisdictional fact, it will be understood to speak the truth on that point, and it will not be presumed that there was other or different evidence respecting the fact, or that the fact was otherwise than as averred."

6. It appears from the order given by the court below that by the affidavit of one J. G. Lewis, the plaintiff in the action, personal service of summons could not be had on Arthur C. Probert, the defendant therein, within the State of Oregon; that Probert was not a resident of this state. But nowhere does it appear that due diligence was exercised to ascertain his whereabouts, or that his residence was unknown. The object and spirit of the statute is to give notice to the defendant, if possible, and this, accordingly, provided for the mailing to him of a copy of the summons and complaint, even though not a resident of the state, thereby fully realizing the probability of the nonresident not observing the publication of the notice, with a more favorable opportunity of receiving such notice by mail, if sent to his address. For such reason this method is prescribed and required by the code, and must be followed, unless suffi-

cient excuse appears for not doing so, which excuse would be ample, says Mr. Chief Justice LORD, in *Odell* v. *Campbell,* 9 Or. 298, had the order, in addition to the facts stated, recited that "the residence of the defendant is unknown to the affiant and cannot, with reasonable diligence, be ascertained by him." It is evident from the object sought by the statute that the knowledge of the defendant's whereabouts is not restricted to state lines; and it is also equally as clear that due diligence to ascertain defendant's whereabouts must appear, which is not disclosed by the complaint. We think this omission brings the case clearly within the rule announced and recognized in *Odell* v. *Campbell,* from which it follows that the complaint is clearly inadequate to show jurisdiction of the court in the entering of the judgment in *Lewis* v. *Probert,* and in the ordering of the sale, under which the note here sued upon was purchased.

7. The complaint is therefore insufficient, and no error was committed in sustaining the demurrer; but, under the judicial discretion recognized and rule announced in *Powell* v. *Dayton S. & G. R. Co.* 14 Or. 22 (12 Pac. 83) and *State ex rel.* v. *Richardson,* 48 Or. 309 (85 Pac. 225), the cause should be remanded for such further proceedings as may be deemed necessary, not inconsistent with this opinion.

AFFIRMED AND REMANDED.

---

Decided 17 December, 1907.