## WARMSPRINGS IRR. DIST. v. MAY.
### No. 9447.

Circuit Court of Appeals, Ninth Circuit.
Feb. 18, 1941.

Ed R. Coulter, of Weiser, Idaho, and Teal, Winfree, McCulloch, Shuler & Kelley of Portland, Or., for appellant.

John F. Reilly and James G. Wilson, both of Portland, Or., for appellee.

Before GARRECHT, HANEY, and HEALY, Circuit Judges.

GARRECHT, Circuit Judge.

Appellee, May, the holder of six bonds of appellant, brought this action against appellant Warmsprings Irrigation District to recover $4,530 on matured interest coupons attached to said bonds. At the time of the filing of the complaint on November 26, 1937, the principal of none of the bonds held by appellee had matured and there was no acceleration clause in the bonds maturing the same for default in the payment of interest. During the progress of the litigation additional interest coupons and one principal bond matured, and appellee filed a supplemental complaint so as to recover for these additional sums.

The bonds themselves and the interest coupons were direct promises on the part of appellant to pay the bearer $1,000 on each bond on a certain named date with interest payable to the bearer of the respective coupons semiannually as they matured.

The appellant during 1917, 1919, and 1920 issued and sold these coupon bonds aggregating $1,550,000 par value and being numbered consecutively from No. 1 to No. 1550. Appellant District levied assessments against the property of the District in amounts sufficient to pay its bonded indebtedness when due, together with costs of operation, as required by law, up to and including the year 1928, for collection in 1929. At no time during the years 1925 to 1931, inclusive, was appellant able to collect sufficient revenue to pay its maturing and past-due indebtedness, and no payment was made thereon.

Prior to July 24, 1929, a committee representing the owners of the bonds of the District was formed and on said date an agreement was entered into by appellant, Warmsprings Irrigation District, said bondholders' committee, and the State Reclamation Commission of the State of Oregon, providing that the indebtedness of the District was to be refunded by the issuance of refunding bonds in the amount of $450,000 and the payment of $400,000 cash on a pro rata basis to the holders of the outstanding bonds, which then amounted to $1,550,000. The owners of more than 98% of the outstanding bonds of appellant District agreed in writing to said plan of settlement. The owners of the bonds and coupons here involved did not agree to the plan, nor did they in the court proceedings for authorization and approval file any objections or make any appearance. There was no service upon them except by publication.

Pursuant to said agreement proceedings were had by said District for the authorization of refunding bonds in the amount of $450,000, which were authorized at an election held on October 8, 1929. The resolution therefor, and the necessary steps to refund and compromise appellant's bonded indebtedness were taken under Chapter 433, General Laws of Oregon for 1927, being Chapter 7, Title 48, Oregon Code, 1930. The bondholders' committee and the secretary of the State Reclamation Commission endeavored to get all of the owners of the unpaid bonds of the District to file their bonds with the committee and agree to the proposed plan of settlement. For different reasons agreements from the owners of twenty-four of these bonds could not be secured. Matters were in this condition when the Oregon Legislature met in 1931 and passed Chapter 50 of the General Laws of Oregon for 1931. Appellant, under this law, filed its petition in the Circuit Court of Oregon to secure the constructive consent of the owners of the twenty-four bonds, who had not joined the other 98% of the bondholders who had given their consent to the proposed plan of settlement.

The foregoing facts, the refunding agreement, the petition, and decree are pleaded

as a part of the answer and defense of appellant in the instant suit. It was further set up as an answer and defense of this suit that in the Circuit Court of Oregon a subsequent petition was filed which sought to validate the issuance of refunding bonds in accordance with an election held October 8, 1929, and in this subsequent suit a decree was entered confirming the issuance of said refunding bonds.

In another part of the answer the statute of limitations was pleaded as a defense to those coupons which had matured on or before July 1, 1927.

Appellant contends that by said decrees of the Oregon state court it was adjudged that all of the owners of the 1,550 original bonds (being the 1,526 bonds which had been deposited by their owners with the bondholders' committee and the twenty-four bonds consent of the owners of which was sought to be procured by the proceeding under Chapter 50 of the General Laws of Oregon for 1931) had given their consent to the refunding, compromise and settlement of said bonded indebtedness of Warmsprings Irrigation District as represented by said 1,550 bonds of the par value of $1,550,000. It is further alleged that by the decrees of the state court it is determined that when appellant deposited said cash and bonds with the State Reclamation Commission as trustee for the owners of said bonds so to be redeemed and retired, then the said original bonds, Nos. 1 to 1550, should be deemed paid and no longer any obligation of the appellant District. It is further pleaded that the required conditions had been complied with by appellant and the District was thereby relieved of any obligation on account of the bonds and coupons included in this action.

No effort was made to collect on the bond or interest here sued on until 1938, when appellee instituted this action in the United States District Court for the District of Oregon; whereupon appellant by its answer interposed the various defenses outlined above. To this answer appellee demurred generally.

The court below held that the statute of limitations had run against coupons which had matured more than ten years before the commencement of suit, but otherwise sustained the demurrer to the answer. Thereupon the appellant, Warmsprings Irrigation District, informed the court that it did not desire to plead further, and judgment was entered for appellee, from which this appeal has been taken.

It was argued in the court below that the Act relied on, being Chapter 50 of the Laws of Oregon 1931, was unconstitutional as applied to appellee and that the action of the Oregon court in attempting to thereby cut off the rights of a nonconsenting bondholder was a violation of the Fourteenth Amendment to the Constitution of the United States. The District Court did not pass upon the constitutionality of the statute, but based its decision upon the ground that the proceedings taken by the Circuit Court of the State of Oregon for Malheur County did not comply with the requirements of Chapter 50 of the Laws of Oregon, 1931.

To make clear the issue arising upon the ruling of the District Court we point out that the answer in this case merely narrated the facts hereinbefore stated; there was no detailed recital of the various steps taken whereby the reorganization of the bonded indebtedness of appellant was effectuated. The complaint on which the action in the state court was based was not attached to the answer here but only the decree wherein the proceedings had in state court were set forth in general terms with the special finding:

"Wherefore, by reason of the law in the premises it is ordered, adjudged and decreed that all of the owners of the 1550 bonds of Warmsprings Irrigation District, * * * have under and in accordance with the provisions of Chapter 50 of the General Laws of Oregon for 1931, consented and given their consent to the refunding, compromise and settlement of said bonded indebtedness * * *."

Moreover, it is alleged in the answer in this action that in a second suit in the Oregon State court, brought to test the validity of the reorganization bonds, a decree was entered, which is also made a part of the answer in this action, which said second decree adjudges that "all of the steps had and taken * * * in connection with each and every and all of the matters and things specifically found * * * are hereby ratified, approved and confirmed and declared valid, legal and binding"; and further, among other things, said second decree adjudged that the "obtaining of consent of certain bondholders by Court proceedings were and are valid, regular and legal and in all respects in conformity with the requirements and provisions of the

Statutes of the State of Oregon * * * and all of same are hereby ratified, approved and confirmed."

■ Upon the demurrer to the answer of appellant the allegations properly pleaded therein must be taken as admitted. Nevertheless, the District Court held that the recitals in the state court's decrees were insufficient as a plea of payment and cancellation of the bond and coupons sued on. The court declared that it was essential to supplement the decrees by alleging in addition thereto, separately and affirmatively, that each different requirement of the Oregon statute had been followed and particularly that the express provisions which require that "an irrevocable offer in writing be presented to the Board of the irrigation district by the holders of at least eighty per cent of all the evidence of indebtedness to deliver and surrender up *all* bonds, warrants and other evidences of indebtedness, in exchange for refunding 'bonds and/or cash', 'or to accept in full payment of *all* of such outstanding indebtedness', 'money and/or refunding bonds', 'such creditors and such owner of such indebtedness against such district to agree to absorb the loss' between the outstanding indebtedness and the refunding bonds and/or cash," had been complied with. In this case the answer does not allege directly that such offer was made, it being therein covered, if at all, by the general allegation of compliance with the statute and the recitals of the decree to the same effect.

■ The demurrer is taken as admitting the facts pleaded in the answer, and therefore that the state court decree was made. That decree would bar the present suit as res judicata, unless not binding on appellee.

■ Since this is a collateral attack on the state court decree, such decree must be taken as conclusive unless it is void. It is void if the state court had no jurisdiction over the subject matter of the suit, or over the persons of the defendants therein. Want of jurisdiction over the subject, the person or the res is a proper subject of inquiry. Thompson v. Whitman, 85 U. S. 457, 18 Wall. 457, 21 L.Ed. 897. The first question here is: Has appellee raised the question, so that inquiry can be made?

■ While it is true that the question as to want of jurisdiction in the court where the action is pending may be raised by demurrer if the defect is apparent on the face of the pleadings (Southern Pacific Company v. Denton, 146 U.S. 202, 206, 13 S.Ct. 44, 36 L.Ed. 942), such rule applied here means that want of jurisdiction in the court below, not the state court, is raised by demurrer. Here it does not appear on the face of the answer that the state court did not have jurisdiction. The answer fails to allege certain facts which would show that the state court did have jurisdiction. One of the particular facts omitted is the residence of the owners of the bonds involved herein. Was it necessary? What was sought in the state court was a personal judgment. Such a judgment is invalid against a nonresident on constructive service of process. Therefore it is important to know whether the owners of the bonds in question were residents or nonresidents of Oregon. If the state court was one of general jurisdiction, as distinguished from an inferior court with special or limited jurisdiction, it would be presumed that jurisdiction existed, and it would be unnecessary to plead to that effect. 34 C.J. 1060, § 1498. In Oregon, however, it seems to be the rule that when the state court—one of general jurisdiction—took cognizance of the reclamation proceedings pursuant to special statutory authority, it became an inferior court for that cause, and there is no presumption to aid appellant. These proceedings being in derogation of the common law, the jurisdiction attempted to be conferred upon the state Circuit Court is statutory, and therefore there is no presumption in favor of the jurisdiction of the court, although in fact it is a court of general jurisdiction.

Here jurisdiction over the holders of the bonds who had not agreed to the plan of reorganization was sought not by service of any process upon them but by following the procedure outlined in Chapter 50, General Laws of Oregon, 1931, simply by publishing a notice that unless these bondholders came in and objected within ninety days from the first publication, the court would consider them as consenting and would decree that they had consented to the settlement, even though in fact they had never heard of the proceeding.

In the case of DeVall v. DeVall, 57 Or. 128, at page 137, 109 P. 755, at page 759, 110 P. 705, the Supreme Court of Oregon said: "When a court of general jurisdiction takes cognizance of a cause pursuant to statutory authority and not in conform-

**806**

ity with the principles of the common law, such tribunal becomes an inferior court and its proceedings in such cases are subject to all the incidents applicable to a court of that kind, and, in order that its adjudications may be invulnerable to attack, its record must affirmatively show that jurisdiction of the person against whom the judgment was rendered, was secured in the manner prescribed, for no presumptions can be invoked to supply any omissions in this particular."

See also Fishburn v. Londershausen, 50 Or. 363, 373, 92 P. 1060, 14 L.R.A.,N.S., 1234, 15 Ann.Cas. 975.

■ In such circumstances the record in the state court must affirmatively show that the state court had jurisdiction. Since it does not, the state court decree is not res judicata and there being no other defense, the judgment below is affirmed.