JARVIE *v.* STATE TAX COMMISSION

William K. Shepherd, Portland, argued the cause and submitted a brief for plaintiff.

Gerald F. Bartz, Assistant Attorney General, Salem, argued the cause and submitted a brief for defendant.

Decision for defendant rendered, June 6, 1962.

PETER M. GUNNAR, Judge.

This is an appeal from the State Tax Commission's opinion and order No. VL 61-374, which denied plaintiff's claim to a war veteran real property exemption under ORS 307.250. The case comes before this court upon the defendant's general demurrer to plaintiff's complaint.

The facts, as alleged in the complaint, establish that the plaintiff is the unremarried widow of one Arthur C. Jarvie, who served in the United States Army from August 27, 1918 to March 7, 1919. Jarvie died on March 7, 1960. At his death, Jarvie left the plaintiff as the surviving tenant by the entirety of certain real property in Multnomah County. On March 29, 1961, the plaintiff filed with the Assessor of Multnomah County, Oregon, the statutory affidavit

required by ORS 307.260, claiming a tax exemption on that real property under ORS 307.250. The Multnomah County Assessor denied her claim for exemption, from which denial she appealed to the State Tax Commission.

The plaintiff claims her exemption under subsection (4) of ORS 307.250, which provides that there shall be exempt from taxation, not to exceed $7,500 of true cash value, the homestead or personal property of:

"(4) The widow remaining unmarried of a war veteran, but her exemption shall apply only to the period preceding the date of her first remarriage."

The term "war veteran" is not defined in ch 307. A general definition of war veteran is set forth in ORS 174.100. It provides:

"174.100. Definitions. As used in the statute laws of this state, unless the context or a specially applicable definition requires otherwise:

"* * * * *

"(7) 'War veteran' includes every citizen of the United States who has been a member of the Armed Forces of the United States of America, and in active service for more than 90 consecutive days in time of any war in which this country has been or shall hereafter be engaged, including the period between September 15, 1940, and December 31, 1946, and the period between June 25, 1950, and midnight of January 31, 1955, and who has been discharged or released therefrom under honorable conditions; * * * and provided further, that any such citizen otherwise eligible, who was discharged or released, under honorable conditions, on account of service-connected injury or illness prior to the completion of such 90-day service, shall nevertheless be deemed to be a 'war veteran.'"

There is no contention that Jarvie was discharged prior to 90-day's service by reason of a service-connected injury or illness.

The plaintiff contends that she is entitled to the exemption by reason of the service by Jarvie between the declaration of World War I and the Congressional Proclamation of 1921 terminating World War I. The State Tax Commission, on the other hand, denied the exemption because, although Jarvie served more than 90 days, only 77 of those days were served between the declaration of World War I and the Armistice on November 11, 1918.

The sole issue in this case, then, is the construction of the words "in time of any war" in ORS 174.100 when applied to World War I.

"In the construction of statutes, when construction is necessary or proper, the primary and governing rule to be followed and the one that is law and binding upon the court is to ascertain and declare the legislative intent. All other rules of statutory construction are secondary in importance and are simply guides to aid in the application of the primary rule. * * *

"* * * * *

"* * * it is only in cases where the language used in the statute is ambiguous and uncertain that resort may be had to rules of statutory construction in ascertaining and declaring the legislative intent. It is elementary that when the legislature, in enacting a law, makes use of plain, unambiguous, and understandable language, it is presumed to have intended precisely what its words imply. There is no occasion to go beyond those words and their plain meaning to ascertain by application of rules of statutory construction the legislative purpose. The words used speak for themselves." *Berry*

*Transport, Inc. v. Heltzel,* 202 Or 161, 165-7, 272 P2d 965 (1954).

"In construing a statute words of common use are ordinarily to be taken in their natural, plain and obvious signification, * * *." *City of Portland v. Meyer,* 32 Or 368, 370, 52 P 21 (1898).

In other words, they are to be interpreted " 'in their ordinary and usual signification,' as they are 'popularly used' * * *." *Fishburn v. Londershausen,* 50 Or 363, 370, 92 P 1060, 14 LRA (NS) 1234 (1907).

■ To the average citizen, war is a state of actual hostility, a time when people are fighting and dying for our country. The average citizen is not concerned with legalistic concepts of declarations of war and signing of peace treaties. As popularly used, the term "World War II" would encompass the period from Sunday morning, December 7, 1941, until September 2, 1945, when General McArthur met the Japanese emissaries in Tokyo Bay. The fact that war was not declared until December 8, 1941, nor was it concluded until substantially after the close of 1945, would not be within his ordinary contemplation.

Similarly, the time of war in World War I would run from the declaration of war by Congress on April 6, 1917, until the fighting stopped on November 11, 1918, even though the legalistic state of war was not terminated until the joint Congressional Resolution of 1921.

■ When the legislature provided that a war veteran was a person who had served more than 90 days in time of war, its plain, unambiguous and understandable meaning was that the time of war with reference to World War I ended with the cessation of hostilities on November 11, 1918. The same conclusion has been reached by the California courts in *Kaiser v. Hopkins,*

6 Cal2d 537, 58 P2d 1278 (1936), and by other courts in *Scott v. Commissioner,* 272 Mass 237, 172 NE 218, and *Long v. St. Joseph's Life Insurance Company,* 225 SW 106, 248 SW 923 (1923), all cited by the commission.

■ Since it first defined "war veteran" in 1943, the legislature has reviewed and amended this definition more than once. Particularly, it did so to specifically define the entitlement dates of World War II and the Korean conflict. Had the legislature intended that the time of World War I be other than as popularly and ordinarily understood, it had ample opportunity to amend. But it did not, and that it did not further emphasizes its intent not to extend the date beyond November 11, 1918.

■ It is contended by plaintiff that the interpretation of the termination of World War I on November 11, 1918, when read in conjunction with the inclusion, under ORS 174.100, of dates beyond the Armistice with respect to World War II, and the inclusion of the Korean conflict dates, constitutes a violation of the constitutional guaranty of equal privileges and immunities. The Oregon cases do not support this contention.

> "* * * It is inherent in the exercise of the power to tax that a state be free to select the subjects of taxation and to grant exemptions. Neither due process nor equal protection imposes upon a state any rigid rule of equality of taxation. [Citing cases.] This Court has repeatedly held that inequalities which result from a singling out of one particular class for taxation or exemption, infringe no constitutional limitation. [Citing many cases.]
>
> " 'Like considerations govern exemptions from the operation of a tax imposed on the members of a class. The legislature is not bound to tax

every member of a class or none. It may make distinctions of degree having a rational basis, and when subjected to judicial scrutiny they must be presumed to rest on that basis if there is any conceivable state of facts which would support it. [Citing cases.]

" 'This restriction upon the judicial function, in passing on the constitutionality of statutes, is not artificial or irrational. A state legislature, in the enactment of laws, has the widest possible latitude within the limits of the Constitution. In the nature of the case it cannot record a complete catalogue of the considerations which move its members to enact laws. In the absence of such a record courts cannot assume that its action is capricious, or that, with its informed acquaintance with local conditions to which the legislation is to be applied, it was not aware of facts which afford reasonable basis for its action. Only by faithful adherence to this guiding principle of judicial review of legislation is it possible to preserve to the legislative branch its rightful independence and its ability to function.' " *Wittenberg et al v. Mutton et al,* 203 Or 438, 446, 280 P2d 359 (1955), quoting *Carmichael v. Southern Coal Co.,* 301 US 495, 81 L ed 1245, 57 S Ct 868, also quoted in *Garbade and Boynton v. City of Portland,* 188 Or 158, 191, 215 P2d 1000.

"* * * A legislative classification for the purpose of taxation will not be held invalid unless it is plainly and manifestly arbitrary and without any reasonable basis. [Citing cases.] * * *." *Fox v. Galloway,* 174 Or 339, 351, 148 P2d 922 (1944).

▆▆▆▆▆ Uniformity of taxation "* * * does not mean that the subjects of the class selected for taxation shall be precisely alike in all respects, but rather that they must be alike in the essential particulars which induced the legislature to include them in one classification. All within the class must be susceptible

of like treatment and all the constituents of the class must be affected alike under like circumstances. * * *." *Standard Lbr. Co. v. Pierce et al,* 112 Or 314, 336, 228 P 812 (1924), cited and quoted with approval in *Fox v. Galloway, supra.*

"The question of classification is purely legislative, and only when the courts can say there is no reasonable justification for the discrimination made will they interfere. *Safeway Stores v. Portland,* 149 Or 581, 42 P2d 162." *Wittenberg et al v. Mutton et al, supra,* at 447-8.

It lies solely within the province of the legislature to determine what service to his country shall entitle a veteran or his widow to tax exemption. As popularly used, the time of World War I ended on November 11, 1918. There is nothing arbitrary about terminating service entitlement with the Armistice on November 11, 1918. It is not made arbitrary by including service beyond September 2, 1945.

Furthermore, to extend the definition of "time of war" beyond November 11, 1918, the date on which World War I is ordinarily understood to have ended, would violate the well established rule that exemptions from taxation are to be strictly construed. *Benton County v. Allen,* 170 Or 481, 133 P2d 991 (1943); *In re Smith's Estate,* 144 Or 561, 25 P2d 924 (1933).

In summation, it is the opinion of this court that the ordinary, popular, and proper interpretation of the phrase "time of war" in ORS 174.100(7) with respect to World War I is the period from April 6, 1917 through November 11, 1918, and that such construction does not violate the constitutional privilege of equal privileges and immunities by reason of the specific statutory extension of the entitlement dates as to World War II beyond September 2, 1945.

A decree will be entered under Rule 31.

Dated this 6th day of June, 1962.

**DECISION UPON REHEARING**

William K. Shepherd, Portland, argued the cause and submitted a brief for plaintiff.

Gerald F. Bartz, Assistant Attorney General, Salem, argued the cause for defendant.

Decision reaffirming earlier opinion rendered June 28, 1962.

PETER M. GUNNAR, Judge.

On rehearing, counsel for plaintiff presented additional authorities in another exhaustive brief of the issues, citing judicial definitions of "war" and

"peace" under varying statutes and factual conditions. However, in his argument he acknowledged that he did not believe that the legislature intended to confer the benefit of this veteran's exemption upon one who had served in the armed forces from April 1, 1921, to July 2, 1921, the 90 days immediately preceding the formal cessation of World War I by Congressional resolution. Instead he sought that this court choose some day after November 11, 1918, and before July 2, 1921, and say arbitrarily that the war ended then. This court will not usurp the legislative function, nor does it need to infringe on that function at all to preserve the constitutionality of this statute.

The only choices are November 11, 1918, and July 2, 1921. The question before this court is: Which did the legislature mean? As laid down in the original opinion, the clear and unambiguous legislative meaning was that World War I ended on November 11, 1918.

This court takes judicial notice of an opinion of the Attorney General, dated August 7, 1951, in which Attorney General Neuner interpreted this statute to mean that World War I began on April 6, 1917, and ended on November 11, 1918. 1950 Ops Att'y Gen'l 239. Upon this opinion, various administrative bodies of this state have been acting for more than ten years and through five legislative sessions. Had the legislature intended otherwise, it had ample opportunity to amend the statute. Furthermore, as stated in *Pacific Supply Cooperative v. State Tax Commission*, 224 Or 556, 560, 356 P2d 939 (1960):

"2, 3. In the absence of judicial construction, administrative construction is informative, and unless clearly at variance with the express terms of the statute, is entitled to respect. * * *."

Finally, the plaintiff seeks to construe the word "including" in ORS 174.100(7) as used to define World War II by dates to extend the period of World War I. In fact, the contrary is the actual effect of this word. If "time of war" in this statute means from the declaration to the formal termination, then to "include" the period from September 2, 1945, to noon on December 31, 1946, in World War II would be tautological. Formally, World War II had not ended by December 31, 1946, and if the formal, legalistic meaning is used, there is no need to "include" this period. The inclusion of the period from September 15, 1940, to December 31, 1946, can only make sense when the normal, usual, and intended meaning of "time of war" is taken to mean from the declaration of war to the armistice, the period of hostilities.

The only meaning for "time of war" which coincides with the extrinsic factors in the language of the statute and with its administrative and legislative history is that which is the plain and popular meaning. This court so found in its earlier opinion, and upon rehearing, that earlier opinion is reaffirmed.

A decree will be entered herein under Rule 31.

Dated this 28th day of June 1962.