JESSE C. ANGE v. THE SOVEREIGN CAMP OF THE WOODMEN OF THE WORLD.

(Filed 23 February, 1916.)

**Removal of Causes—Transference of Causes—Fraternal Societies—Local Lodge—Venue.**

In an action to recover damages alleged to have been received by the plaintiff while being initiated into a fraternal insurance society, in consequence of rough treatment, brought in a different county from that of the residence of the plaintiff and the one wherein the injury was alleged to have been received, it appeared that the defendant, the head lodge, had a local lodge in the county of the venue, in which members were received, the usual business of such lodges transacted, and membership fees collected and remitted to it: *Held,* the transactions of the local lodge were such usual or continuous business as contemplated by the statute, and the cause was improperly transferred to the county in which the plaintiff resided and the injury was alleged to have been received. Revisal, sec. 423.

CIVIL ACTION to recover damages for personal injury, heard by *Bond, J.,* at January Term of WASHINGTON, on a motion to remove the case for trial to Martin County.

It appears from the complaint, made a part of the case on appeal, that defendant is a fraternal insurance society, having separate lodges in this State, one in Washington County and one in Martin County, the members paying initiation fees, and dues, and taking insurance for premiums, the defendant, in this respect, not being unlike other fraternal insurance societies.

Plaintiff alleges that while being initiated as a member of the subordinate lodge at Jamesville in Martin County he was assaulted and

subjected to rough treatment, being severely shocked by a current of electricity, which resulted in serious and permanent injury to him.

Defendant, before answering, asked that the case be removed for trial to Martin County, where plaintiff resides, and where the cause of action arose, plaintiff contending that the action was properly brought in Washington County, as defendant is a nonresident corporation, and usually did business in Washington County at the time this action was brought and the injury was inflicted. For the purpose of passing upon the motion, the following facts were admitted by the parties:

1. The plaintiff was at the time that the action was commenced, and now is, a resident of Martin County, and the defendant is a nonresident corporation, being the only defendant.

2. The defendant when suit began had, and now has, subordinate lodges in different places, one of which is in Martin County, one in Washington County, and others in various other counties.

3. The cause of action, if any ever existed, arose in Martin County.

4. The subordinate lodges in various counties each has authority, through its officials, to collect fees due to the head lodge, which is the defendant.

The court removed the case to Martin County, and plaintiff appealed.

*W. M. Bond, Jr., for plaintiff.*
*G. V. Cowper and R. H. Lewis, Jr., for defendant.*

WALKER, J., after stating the case: It is provided by statute that an action against a corporation chartered by another State, country, or government may be brought in the Superior Court of any county in which the cause of action arose, or in which it usually did business, or in which it has property, or in which the plaintiffs, or either of them, reside. Revisal, sec. 423. There are four cases, therefore, in which the place of trial may be determined differently, and it is possible, under this provision, that the action may brought in any one of four counties, at the election of the plaintiff, as the cases are stated alternatively. Under this view of the law, as plaintiff resided in Martin County and the cause of action arose therein, he could have sued in that county, but was not bound to do so, if the defendant either had property or usually did business in Washington or any other county. Our opinion, upon the facts stated, is that it usually did business in Washington County, if also it did not have property there. It had a lodge there, which, according to the accepted definition, means the meeting room of an association, as well as the regularly constituted body of members which meets therein, for the transaction of its business or the conduct of its affairs. The lodge collected the fees due to the defendant, as "the head lodge." The regular collection of fees due

from members of the local lodge clearly and unmistakably indicates the transaction of business, which was not only "usual," but continuous in its nature, and necessarily so. It appears that the lodge admitted persons to membership in defendant corporation, collected their dues, and presumably conducted such business as is usually characteristic of such institutions. Why such transactions are not "usual business" within the meaning and intent of our statute we are unable to see. Two cases seem to be direct authorities for this view of the facts: *International Harvester Co. v. Commonwealth,* 147 Ky., 655, 666; *Inter. Text-book Co. v. Pigg,* 217 U. S., 91, 104. In the former case, the agent of the plaintiff took orders for the sale of goods and collected money due his employer, and in the latter plaintiff conducted a correspondence school at Scranton, Pa., by selling scholarships in Kansas (and other States) and collecting fees from its pupils, though it had no office in Kansas, but carried on its business solely by correspondence. It was held in each case that the plaintiff was conducting business in the State where the collections were made, and that it was continuous and, of course, "usual." The Court in the *Pigg case* held that upon any reasonable interpretation of the statute, the company, both at the date of the contract sued on and when the action was brought, must be held as "doing business" in Kansas. It had an agent in the State, who was employed to secure scholars for the schools conducted by correspondence from Scranton, and to receive and forward any money obtained from such scholars. Its transactions in Kansas, by means of which it secured applications from numerous persons for scholarships, were not single or casual transactions, such as might be deemed incidental to its general business as a foreign corporation, but were parts of its regular business continuously conducted in many States for the benefit of its correspondence schools; that while the Supreme Court of Kansas has distinctly held that the statute did not embrace single transactions that were only incidentally necessary to the business of a foreign corporation, it also adjudged that the business done by the text-book company in Kansas was not of that kind, but indicated a purpose to regularly transact its business from time to time in Kansas, and therefore it was to be regarded as doing business in that State, within the meaning of the statute; and that it "was the intention of the Legislature that the State should reach every continuous exercise of a foreign franchise," and that it should apply even where the business of the foreign corporation was "purely interstate commerce." The Court further said that the construction given to the statute by the Kansas court was correct. The two cases are parallel with this one, and the same rule of construction must govern. If it was "usual business" to receive orders for goods and collect the money due for them, it is equally "usual business" to receive members into the lodge and collect their dues or

fees, and, it may be added, to sell them insurance, if desired. But there are other reasons for holding that defendant was conducting its usual business in Washington County, which need not be mentioned, as we have adequately disposed of the question raised by the exception to the ruling, which is reviewable in this Court. *Cedar Works v. Lumber Co.,* 161 N. C., 603.

We, therefore, conclude that the venue was correctly laid in Washington County, and that the court erred in removing the case.

Reversed.