# LANE COUNTY LABOR TEMPLE *v.*
## STATE TAX COMMISSION

Keith D. Skelton, Eugene, tried the cause for plaintiff. With him on the brief were Skelton, Wilson & Wylie, Eugene.

Gerald F. Bartz, Assistant Attorney General, Salem, tried the cause and submitted a brief for defendant.

Decision for plaintiff rendered March 4, 1964.

PETER M. GUNNAR, Judge.

This is a suit to set aside State Tax Commission Opinion and Order No. VL 62-154 denying plaintiff's duly claimed exemption from ad valorem real property taxes assessed against its labor temple building in Eugene, Oregon.

Plaintiff is a corporation organized and existing under the nonprofit corporation laws of Oregon. In late 1960, plaintiff acquired a building built to its specifications in the city center of Eugene. Before the end of January, 1961, plaintiff filed its claim for exemption of this building from real property taxes with the Assessor of Lane County. The assessor denied the exemption, plaintiff appealed to the commission, and the commission sustained the assessor and denied plaintiff's exemption by its above-noted order.

Plaintiff claims exemption as an educational and charitable institution under ORS 307.130 and as a fraternal organization under Oregon Laws 1961, ch

543, now codified as ORS 307.134 and 307.136. When plaintiff filed its original claim for exemption for the tax year 1961-2, ORS 307.134 and 307.136 had not been enacted. At its hearing defendant waived any question of the sufficiency of the original claim to support a claim under ORS 307.134 and 307.136 because the 1961 statute made the exemption applicable to the tax year in question. Defendant has similarly waived this defect in this court.

ORS 307.130 is the general property tax exemption statute, allowing exemptions to literary, scientific, benevolent, and charitable institutions. Labor organizations do not usually qualify for exemption under such general statutes. *Johnson v. Sparkman,* 159 Fla 276, 31 So2d 863, 172 ALR 1067 (1947). Plaintiff offered evidence of some minor educational activities carried on at its temple and some charitable or benevolent activities carried on by its members outside the temple. But plaintiff's primary and controlling purpose is the ownership and management of a building in which all the labor unions of Lane County have their offices and hold their meetings, thereby furthering the cohesiveness of the union movement in that county. This primary and controlling purpose does not qualify plaintiff for exemption under ORS 307.130.

In *Oregon Stamp Society v. Commission,* 1 OTR 190, 206 (1963), this court held that an

"* * * institution to be exempt under ORS 307.130 must be a nonprofit, charitable institution performing * * * activity which relieves the state of a burden which would involve a much larger amount of taxation than would be waived by the exemption and that such * * * activity must be a primary function of the institution, not

merely an activity incidental to a primary activity or purpose which is basically what Mr. Justice ROSSMAN called 'a self-regarding purpose' in *Oregon Physicians Service v. State Tax Commission, supra* (220 Or 507). \* \* \*"

This rule applies equally to this case. Plaintiff is not exempt from property taxation under ORS 307.130 because, despite its incidental educational and charitable activities, plaintiff is not primarily a literary, scientific, benevolent or charitable institution. Apparently, a looser construction allowing exemption regardless of primary purpose is applied in Tennessee. *Nashville Labor Temple v. City of Nashville,* 146 Tenn 429, 243 SW 78, 23 ALR 807 (1922). Though plaintiff urges the adoption of the Tennessee rule, the primary purpose rule is firmly established in this state and controls in this case.

■ The fraternal organization statutes, ORS 307.134 and 307.136, exempt from property taxation that part of the real property of fraternal organizations

"\* \* \* which is actually occupied or used in fraternal or lodge work or for entertainment and recreational purposes by one or more fraternal organizations, except that property or portions of property of a fraternal organization rented or leased by it at any time to other persons for sums greater than out-of-pocket expenses for heat, light, water and janitorial services and supplies \* \* \*." ORS 307.136(1).

ORS 307.134(1) defines a fraternal organization as a corporation:

"(a) Organized as a corporation not for profit under the laws of any state or national government;

"(b) Which is not solely a social club but is

established under the lodge system with ritualistic form of work and representative form of government;

"(c) Which regularly engages in or provides financial support for some form of benevolent or charitable activity with the purpose of doing good to others rather than for the convenience of its members;

"(d) No part of the income of which is distributable to its members, directors or officers;

"(e) In which no member, officer, agent or employe is paid, or directly or indirectly receives, in the form of salary or other compensation, an amount beyond that which is just and reasonable compensation commonly paid for such services rendered and which has been fixed and approved by the members, directors or other governing body of the corporation; and

"(f) Which is not a college fraternity or sorority."

In ORS 307.134(2), certain named organizations are declared exempt as fraternal organizations:

"(2) For the purposes of ORS 307.136, 'fraternal organization' includes, but is not limited to, the grand and subordinate lodges of the Masons, the grand and subordinate lodges of the Knights of Pythias, the Knights of Columbus, the Benevolent and Protective Order of Elks, the Fraternal Order of Eagles, the Loyal Order of Moose, the Independent Order of Odd Fellows, the Oregon State Grange, the American Legion and the Veterans of Foreign Wars."

Plaintiff is not one of the exempt organizations named in subsection (2), although union labor organizations generally are considered to be fraternal organizations. *Ancient Order of United Woodmen v. Shober*, 16 SD 513, 94 NW 405 (1903); *Huffman v. Brotherhood of R. Trainmen*, 65 ND 446, 259 NW 663

(1935); *Davis v. Painting & Decorating Contrs.,* 240 Miss 394, 126 So2d 876 (1961).

To qualify for exemption plaintiff must meet the requirements of the six subsections of ORS 307.134(1). It qualifies under subsections (a), (d), (e) and (f) of that subsection because: It is a corporation not for profit; no part of its income is distributable to its members, directors or officers by an express prohibition in its bylaws; it pays no unreasonable compensation; and it is not a college fraternity or sorority. Whether plaintiff qualifies under subsections (b) and (c) of ORS 307.134 presents more difficult factual questions.

Plaintiff is not a social club; but ORS 307.134(1) (b) does not affirmatively require that a fraternal organization be a social club. A fraternal organization may be a social club. The statute merely requires that it not be solely a social club. This is a negative requirement. While plaintiff has sponsored a dance or two for the public, its activities are predominantly those of a real estate corporation owning and operating a labor office building to promote labor union activity and solidarity. Therefore, because it is not a social club, it meets the negative requirement of not being solely a social club.

██ Whether or not plaintiff is established under the lodge system as required by ORS 307.134(1)(b) presents the difficult problem of defining a lodge system. The statute contains no definition. One judicial definition of a "lodge" defines it as "a secret society." *State v. Nat. Ass'n of the Farmers' & Mech. Mut. Aid Ass'n,* 35 Kans 51, 9 P 956 (1886). A lodge has also been defined as a meeting room of an association as well as the members who regularly meet there. *Ange v. Woodmen,* 171 NC 40, 41, 87 SE 955 (1916). These

are general dictionary definitions. Presumably the named organizations exempt under ORS 307.134(2) are "established under the lodge system." Their distinguishing features are some degree of secrecy, some ritual, and some element of brotherly affection or connection, a bond uniting the members. Plaintiff's meetings and business are secret. A password is required for admission to its meetings. The union movement grew in part out of fraternal benevolent societies united by common problems and their pursuit of particular crafts. Such a fraternal bond appears equally as strong as those which unite the members of some of the expressly exempt fraternal organizations named in ORS 307.134(2).

Upon the passage of Oregon Laws 1961, ch 543, plaintiff amended its bylaws to provide "a ritualistic form of work" in compliance with the newly-enacted exemption. These bylaws established a ritual for admission to its meeting and provided for an initiation ceremony consisting of the introduction of the new member, the reading of the bylaws, the taking of an oath, and the singing of "Solidarity Forever," or a similar song, to close the meeting. The evidence disclosed that the plaintiff's ritual work does not equal that of the Masonic orders, approaches that of the Elks, Eagles, and Moose, and exceeds that of the veterans organizations expressly named in the statute.

Plaintiff has a representative form of government as required by the statute. Under its articles and bylaws, plaintiff is governed by officers and directors elected by its members. Its officers meet frequently to carry on plaintiff's business.

■ To qualify under subsection (c) of ORS 307.134 (1), which requires the regular performance of charitable or benevolent work for the purpose of doing good

for others, plaintiff cites the work done by its member unions and plaintiff's organization of that work. Frequently, when nonprofit civic and charitable organizations such as the blood bank and the service clubs need the construction of additional facilities, plaintiff organizes its member unions to provide gratuitously the necessary skilled construction work. Plaintiff engages in this kind of charitable endeavor with sufficient frequency to be deemed "regular." Member performance of the charitable work is imputable to the organization itself. *Johnson v. Sparkman, supra.*

Obviously, plaintiff is not one of the organizations contemplated as being exempt by the legislators in the drafting of the statute. This conclusion is supported by the legislative history of the act. The bill (Senate Bill 323, 51st Legislative Session), drafted by the nonprofit corporations, passed the Senate without amendment. The House Taxation Committee reported it out "do pass" without amendment but a minority report proposed amendment to expressly include labor organizations. A motion to substitute the minority report was defeated and the bill passed the House without amendments, was signed by the Governor and became law. Senate and House Journal 1961, p 575. In the 1963 Legislative Session an amendment of ORS 307.134 to expressly exempt labor organizations was introduced. House Bill 1463, 52nd Legislative Session. After some amendment, this bill was tabled in the House Tax Committee. Senate and House Journal 1963, p 731. This legislative history, both before and after the passage of Oregon Laws 1961, ch 543, establishes the legislative intent not to include labor organizations as fraternal organizations under the 1961 act.

■ But it is a well recognized rule that judicial con-

struction to determine legislative intent cannot be invoked to alter the plain meaning of a statute. Where the language is plain, there is no room for construction. *State ex rel Appling v. Chase,* 224 Or 112, 116, 355 P2d 631 (1960); *Jarvie v. Commission,* 1 OTR 1, 5 (1963).

The 1961 act creates an exemption from ad valorem property taxation for certain organizations which it calls "fraternal organizations." ORS 307.134 defines such exempt organizations. This definition contains no purpose qualification or test. Any corporation can qualify for this exemption, regardless of its primary purpose, if it meets the statutory requirements. In order to so qualify plaintiff changed its procedure. Already a nonprofit corporation, not solely a social club, operating under a representative form of government, engaged in sufficient charitable work for others through its members that it could be deemed regularly engaged in benevolent or charitable work, not paying any unreasonable compensation, and not a college fraternity or sorority, plaintiff made its meetings secret as does a lodge, adopted a ritual comparable to that of many lodges, and provided that none of its income or assets shall be distributable to its members, directors, or officers.

Having met the qualifications of the statute, plaintiff is entitled to claim the exemption provided by the statute. It is immaterial that any family could claim the same exemption by only slightly more substantial changes of its routine and organization. It is not a court's function to decide which taxpayers should be exempt. Duly elected legislative representatives must make this decision. In their wisdom the Oregon legislators have decided that all corporations which meet the requirements of ORS 307.134 may

claim an exemption. It is equally the duty of this court to protect the exemption of those taxpayers qualifying for exemption as it is to deny such exemption claimed by those who fail to qualify. *Methodist Book Concern v. State Tax Com'n,* 186 Or 585, 208 P2d 319 (1949).

Having determined that plaintiff is entitled to claim exemption under ORS 307.136, this court must decide the extent to which plaintiff's two-story building is exempt. Its ground floor contains approximately 5,000 square feet of rented office space, 5,000 square feet of restaurant and bar facilities, and 4,000 square feet of public space, including corridors, washrooms, public meeting halls and the plaintiff's office. Its second floor contains a large meeting hall, and otherwise is unfinished.

The testimony disclosed that, for the tax year in question, the ground floor offices were leased to member unions and the restaurant and cocktail lounge were leased to a concessionaire. The rents for the offices and bar-restaurant were substantially in excess of plaintiff's out-of-pocket expense for heat, light, water, and janitorial services and supplies. The office rent per square foot was higher than most office rent in Eugene. The concessionaire was on a percentage lease. Plaintiff actively solicited tenants among member unions and the public generally. Furthermore, this court assumes that, as part of such rentals, the tenants were entitled to ingress and egress from their offices and businesses and to the use of washroom facilities. Such facilities usually are provided in office buildings in this state. Therefore, under the express exception of the statute, the rented premises and a pro rata portion of the corridors and washroom facilities were subject to tax.

The remainder of the building, consisting of meeting halls on the first floor and a large meeting hall on the unfinished second floor, were rented for a nominal rent which did not exceed the out-of-pocket expenses contemplated by the statute. Therefore, the part of the building containing the meeting halls and that part of the corridors and washrooms applicable to them pro rata were exempt from taxation under ORS 307.136.

Plaintiff's building covers one-half of the quarter block owned by plaintiff. There is no testimony as to the use made of the remaining eighth of a block, though it is part of the property claimed as exempt. If this apparently vacant land is used for parking in connection with the labor temple building, then ORS 307.136(2) determines its taxability. It provides that

"(2) Parking lots maintained solely for the use, without charge, of persons going to and from the buildings exempt under subsection (1) of this section, but not if said lots are used for parking or other purposes not connected with the use or maintenance of the buildings."

This statutory language appears to exempt parking lots only if the entire building is exempt. Such construction is unreasonable in view of the apparent intent of the statute as a whole. If a part of the building is exempt and a parking lot is maintained solely for persons going to and from the building's exempt portions without charge for such parking, then a reasonable construction makes such parking lot exempt. On the other hand, if part of the building is exempt and the parking lot is used, in whole or in part, by persons going to and from the nonexempt part of the building, with or without charge for the parking, the parking lot is not used solely for the

purpose which makes it exempt under ORS 307.136(2) and the entire lot is subject to tax. This is the plain and reasonable meaning of the statute which gives effect to the word "solely."

In summation, plaintiff corporation is not exempt under ORS 307.130 but it is entitled to claim the exemption under ORS 307.136 because it has complied with the requirements of ORS 307.134(1). Under ORS 307.136, only that part of plaintiff's building not rented out as offices and for the bar and restaurant is exempt, because only such remaining portion is not leased or rented for more than plaintiff's out-of-pocket expense for heat, light, water, and janitorial services and supplies. Since part of the building is exempt and part of it not exempt, the corridors, washrooms and similar public facilities must be allocated or prorated to exempt and nonexempt uses. If the remaining unimproved portion of the plaintiff's lot is used for parking, it is fully taxable, unless it is used solely for the parking without charge by persons going to and from the exempt, as distinguished from the nonexempt, parts of the building.

Before a decree can be entered herein, this court must determine precisely the exempt and nonexempt parts of plaintiff's building, the fair market value of each part, and the tax status of plaintiff's lot. The parties are directed to confer in an attempt to reach agreement upon such allocation of building space and the values and the lot's tax status, in accord with this decision. If they cannot agree within 20 days, this cause will be reopened to take testimony upon such allocation and valuation. If they can agree, plaintiff shall present an appropriate form of decree in accordance with this decision under Rule 32.