IN THE OREGON TAX COURT
MAGISTRATE DIVISION

NORTHWEST DANISH FOUNDATION,
*Plaintiff,*

*v.*

MULTNOMAH COUNTY ASSESSOR,
*Defendant.*
(TC-MD 001239F)

Kurt Oppenhagen, Program Manager, Northwest Danish Foundation, argued the cause for Plaintiff.

Steve Skinner, Multnomah County Assessor's Office, argued the cause for Defendant.

Decision for Defendant rendered May 17, 2001.

**SALLY L. KIMSEY, Magistrate.**

Plaintiff appeals from Defendant's denial of property tax exemption for the 2000-2001 tax year.[1] The property is

---

[1] Defendant's denial of Plaintiff's request for an exemption was dated August 9, 2000. Plaintiff's appeal to this court was dated December 22, 2000, 135 days

listed as account number R330751 by the Multnomah County Assessor. A trial in the above-entitled matter was held in Portland on April 30, 2001. Kurt Oppenhagen appeared for Plaintiff. June Pihl appeared as a witness for Plaintiff. Appearing for Defendant was Steve Skinner. At issue is whether Plaintiff's property qualified for an exemption from property taxes under ORS 307.136.

## STATEMENT OF FACTS[2]

Plaintiff's predecessor organization was started in 1923 by three men. The men bought a car that was then used as the prize in a raffle. The raffle raised enough money that the men were able to buy a home in Des Moines, Washington. The home was used as a home for elderly people who were Danish or of Danish descent (Danes). The home was used until 1970 when a modern nursing home was built. At the time it was built, every room was occupied by Danes. As time went by, the nursing home was occupied by only one Dane and eventually no Danes. The Danish community operating the home decided to sell the home and buy a building that would better meet the needs of the Danish community. The home was sold, an office building in Seattle was purchased and the Northwest Danish Foundation was formed. The subject property is the Portland office and cultural center. It is leased by Plaintiff. Since October 1999 it has been leased for $2,173 per month.

There are currently over 600 members of Plaintiff. Membership is open to "[a]ny person of Danish nationality or descent, either of full blood or part blood * * * except that not to exceed 40% of the members may be persons other than such Danes." Plaintiff is governed by a 26 person board of directors. The board sets Plaintiff's policies, vision, and strategies. Plaintiff has a 10 person executive committee. The executive committee serves as the liaison between the board, Plaintiff's various committees, and the Danish community.

---

later. ORS 305.280 requires that the appeal be filed "within 90 days." However, because Defendant did not raise this affirmative defense, the court considers the defense waived.

[2] There are some discrepancies between Plaintiff's written materials and the testimony of Plaintiff's witnesses. Those discrepancies primarily relate to the dates that certain events occurred. They are not material.

Plaintiff holds a monthly business meeting. The meetings follow Robert's Rules of Order.

Plaintiff's mission is "promoting and preserving Danish heritage and social interaction in the Danish Communities in Oregon and Washington * * *." Consequently, Plaintiff organizes a number of activities. The events are open to the public. The public, as well as Plaintiff's members, learn about Plaintiff's activities through a bimonthly newsletter.[3] Plaintiff typically sponsors five programs per month. Some of the activities include a monthly dinner with a short program, film nights, celebrations of Danish holidays, lectures, two book groups—one in English and one in Danish, and other cultural programs. All of the programs relate to Danish culture and heritage. For example, Danish food is served at the dinners. The book groups read Danish literature. Members pay less than nonmembers for the various events.

One of Plaintiff's programs provides elder care services. It may finance needed services to specific people such as lifeline buttons or orthopedic shoes. Plaintiff provides assistance with transportation to appointments. Plaintiff also provides regularly scheduled calls to elderly who request the service.

Plaintiff holds a summer camp in Oregon. The camp annually serves approximately 65 children. The campers have Danish language lessons and are otherwise exposed to Danish heritage and culture. Many of the counselors speak Danish. The costs to run the camp are greater than the money the campers pay to attend the camp. Additionally, Plaintiff annually awards approximately $1,000 in "camperships."

In addition to the "camperships," Plaintiff annually awards approximately 20 scholarships totaling about $14,000. The scholarships range from $250 to $1,000. A scholarship recipient need not be a member of Plaintiff or of Danish descent to receive a scholarship. To raise money for

---

[3] The two newsletters submitted into evidence were each eight pages. They included a listing of scheduled events in Oregon and Washington, a calendar of events, an article, and various updates. The newsletter has a mailing list of 3,500.

the scholarships, Plaintiff holds an annual auction. Plaintiff also undertakes other fundraising activities.

As with many nonprofit organizations, Plaintiff relies on its volunteers. For example, June Pihl has been a board member since Plaintiff's incorporation in 1987. She regularly travels to Seattle for board meetings, occasionally staying overnight. She receives no mileage or other reimbursements for her expenses. The camp counselors are also volunteers, although they do receive a small stipend. Plaintiff's annual auction requires a great deal of volunteer time. Plaintiff utilizes volunteers in numerous other ways as well.

## ANALYSIS

■■ Plaintiff applied for exemption from taxation under ORS 307.136.[4] That statute exempts from taxation certain property "owned or being purchased by fraternal organizations * * *." ORS 307.136. As noted above, Plaintiff leases the subject property. However, ORS 307.112 allows that property leased to an organization "granted exemption or the right to claim exemption * * * under ORS * * * 307.136" may be exempt from taxation if certain specified conditions are met. ORS 307.112(1). Those conditions require that:

"(a)   The property is used by the lessee in the manner, if any, required by law for the exemption of property owned or being purchased by it; and

"(b)   It is expressly agreed within the lease or lease-purchase agreement that the rent payable by the institution, organization or public body has been established to reflect the savings below market rent resulting from the exemption from taxation."

*Id.*

So that the assessor may ascertain that those conditions are met, a claim for exemption under ORS 307.112 must be "verified by the oath or affirmation" and must include:

"(a)   A complete description of the property for which exemption is claimed.

---

[4] All references to the Oregon Revised Statutes (ORS) are to 1999.

"(b) If applicable, all facts relating to the use of the property by the lessee.

"(c) A true copy of the lease or lease-purchase agreement covering the property for which exemption is claimed.

"(d) Any other information required by the claim form."

ORS 307.112(2).

Plaintiff presented no evidence directed toward the specific use of the property. Nor did Plaintiff present a copy of the lease. Thus, the court has no way of knowing whether the lease "expressly agree[s]" that the rent payable by Plaintiff "has been established to reflect the savings below market rent resulting from the exemption from taxation." ORS 307.112(1)(b).

█ Even if the subject property met the requirements of either ORS 307.136 or ORS 307.112, Plaintiff would still need to qualify as a fraternal organization. ORS 307.134 defines fraternal organization. That statutes provides:

"(1) For the purposes of ORS 307.136, 'fraternal organization' means a corporation:

"(a) Organized as a corporation not for profit under the laws of any state or national government;

"(b) Which is not solely a social club but is established under the lodge system with ritualistic form of work and representative form of government;

"(c) Which regularly engages in or provides financial support for some form of benevolent or charitable activity with the purpose of doing good to others rather than for the convenience of its members;

"(d) No part of the income of which is distributable to its members, directors or officers;

"(e) In which no member, officer, agent or employee is paid, or directly or indirectly receives, in the form of salary or other compensation, an amount beyond that which is just and reasonable compensation commonly paid for such services rendered and which has been fixed and approved by the members, directors or other governing body of the corporation; and

"(f)   Which is not a college fraternity or sorority.

"(2)   For the purposes of ORS 307.136, 'fraternal organization' includes, but is not limited to, the grand and subordinate lodges of the Masons, the grand and subordinate lodges of the Knights of Pythias, the Knights of Columbus, the Benevolent and Protective Order of Elks, the Fraternal Order of Eagles, the Loyal Order of Moose, the Independent Order of Odd Fellows, the Oregon State Grange, the American Legion and the Veterans of Foreign Wars."

ORS 307.134.

Defendant agrees that Plaintiff meets the requirements set forth in ORS 307.134(1)(a), (d) - (f). Defendant argues that Plaintiff is not "established under the lodge system with ritualistic form of work" as required by ORS 307.134(1)(b). Defendant also argues that Plaintiff does not have sufficient benevolent and/or charitable activities as required by ORS 307.134(1)(c).

Plaintiff asks the court to rely on the second definition[5] of lodge cited in *Lane County Labor Temple v. Commission*, 1 OTR 511, 517 (1964). That definition defined a lodge as "a meeting room of an association as well as the members who regularly meet there." *Id.* The court disagrees with Plaintiff's reliance on *Lane County Labor Temple* for two reasons. First and foremost, *Lane County Labor Temple* was expressly overruled by *Plywood & Veneer Local v. Commission*, 2 OTR 520, 525 (1967), because the court found that ORS 307.134 specifically excluded labor temples from being fraternal organizations.

Second, even if Plaintiff is a lodge under the above-quoted definition, it would still have to show that it had a "ritualistic form of work." Ritualistic is defined as "of, in accordance with, or characterized by the use of ritual." *Webster's Third New Int'l Dictionary* 1962 (unabridged ed 1993). Ritual is defined as "a code or system of rites (as of a fraternal society)." *Id.* at 1961. Rite is defined as "a prescribed form or

---

[5] The first definition cited in *Lane County Labor Temple v. Commission*, 1 OTR 511, 517 (1964) defined lodge as a "secret society." (Citation omitted.) The parties agree that Plaintiff is not a secret society.

manner governing the words or actions of a ceremony esp. of considerable religious, courtly, social, or tribal significance." *Id.* The only "rituals" or "rites" described by Plaintiff's witnesses was the use of Robert's Rules of Order in conducting its business meetings and perhaps, at social events, greeting others in Danish.

The present case is factually similar to *Filipino-American Assn. v. Dept. of Rev.*, 5 OTR 645 (1974). In *Filipino-American* the ritual consisted of "opening its meetings with the singing of national anthems, a flag salute, and an invocation." *Id.* at 649. The court held that the ritual was "precisely the format of the typical service club, but it is not a 'ritual' as understood by the organizations named in ORS 307.134(2)." *Id.* As in *Filipino-American*, Plaintiff does not have a "ritualistic form of work." Further, as the court stated in *Plywood & Veneer Local*:

> "At Plaintiff's meetings which follow the union meeting the ritual, according to the evidence, consists of calling the meeting to order, a salute to the flag and the introduction of any new members. A password may or may not have been rendered at the prior union meeting. No initiations are conducted. If this constitutes being established 'under the lodge system with ritualistic form of work' then any non-profit group owning real property anywhere in the state can have a meeting, a password, possibly a song, do some charity, and have their property exempt from real property taxes. This obviously was not the intention of the legislature when it enacted ORS 307.134 and ORS 307.136 giving exemptions to fraternal organizations."

2 OTR at 526.

There is nothing in either case law or the statutes to overrule the language of *Plywood & Veneer Local* or *Filipino-American*. Plaintiff is not a fraternal organization within the meaning of ORS 307.134.[6]

---

[6] Because the court finds that Plaintiff does not have a "ritualistic form of work" as required by ORS 307.134(1)(b), the court need not decide whether Plaintiff's financial support in the form of its scholarships and elder care program is sufficient under ORS 307.134(1)(c).

## CONCLUSION

The court finds that the subject property is not exempt from taxation because it is not owned or being purchased by Plaintiff as required by ORS 307.136. Nor does Plaintiff meet the specific requirements of ORS 307.112. Further, even if the subject property met the requirements of either ORS 307.136 or ORS 307.112, the court finds that Plaintiff is not a fraternal organization within the meaning of ORS 307.134. Plaintiff performs numerous good and valued services in accomplishing its mission. However, those good works, without more, do not make it a fraternal organization.

IT IS THE DECISION OF THE COURT that Plaintiff's appeal is denied.