Argued September 30, affirmed October 3, 1960

STATE ᴇx ʀᴇʟ APPLING *v.* CHASE
355 P. 2d 631

WILLIAM S. FORT, ROLAND K. RODMAN, Judges, and ROBERT G. DAVIS, Judge pro tempore.

*Louis S. Bonney,* Assistant Attorney General, and *E. G. Foxley,* Deputy Attorney General, Salem, argued the cause for appellant. With them on the brief was Robert Y. Thornton, Attorney General.

*Wm. F. Frye,* District Attorney, Eugene, argued the cause for respondent. With him on the brief was William T. Linklater, Deputy District Attorney, Eugene.

Before McALLISTER, Chief Justice, and ROSSMAN, WARNER, PERRY, SLOAN, O'CONNELL and GOODWIN, Justices.

GOODWIN, J.

This is an appeal from an order in the circuit court dismissing an alternative writ of mandamus which had been served upon the County Clerk of Lane County.

The Secretary of State, on the advice of the Attorney General, instructed the county clerk to place the office of coroner on the ballot for the general

election to be conducted in Lane County on November 8, 1960. The county clerk having refused to do so under the belief that the office of coroner for his county had been abolished by legislation enacted in 1959, it was decided to test the meaning of the applicable statutes in a mandamus proceeding.

Three circuit judges, sitting in banc, held that mandamus would not lie to compel the clerk to place the office of coroner on the ballot for the reason that the intent of Chapters 628 and 629, Oregon Laws 1959, when read together was to eliminate elective county coroners and to replace them with medical investigators as soon as practicable.

Because the public officials charged with administering the election laws were in doubt with reference to the legislative intent, and because the statutes as enacted contained patent ambiguities and contradictions when read literally, the question of statutory construction has been presented to this court. The short time remaining before the election and the fact that other counties are similarly concerned made it advisable to advance the cause on the docket.

This appeal requires us to construe Chapters 628 and 629, Oregon Laws 1959, which deal with the office of coroner in counties of less than 400,000 population. Lane County is one of 35 counties so affected. The two chapters are somewhat detailed, but in substance Chapter 628 abolishes the office of coroner; Chapter 629 creates an entirely new system for the investigation of deaths and reporting related information.

Chapter 628 contains the following sections which are material to this controversy:

"Section 1. ORS 204.005 is amended to read as follows:

"204.005. (1) There shall be elected at the gen-

eral election, by the qualified voters of each county, the following county officers:

"(a) A sheriff.
"(b) A county clerk.
"[(c) A coroner.]
"[(d)] (c) A county assessor.
"* * * * *

"Section 2. In counties of less than 400,000 persons according to the latest federal decennial census, the term of office of a coroner elected or appointed before the effective date of this Act may continue until the completion of the term for which he was elected or appointed. Upon a vacancy occurring in the office of coroner in counties of less than 400,000 persons according to the latest federal decennial census or the coroner in such a county completes the term of office for which he was elected or appointed, the duties performed by such a coroner shall be transferred to the county or district medical investigator and the district attorney under the applicable provisions of law. In counties of 400,000 persons, or more, according to the latest federal decennial census, the term of the present coroner shall remain unaffected by the 1959 amendments to ORS 204.005."

The concluding section of Chapter 628 provides as follows:

"* * * This Act shall take effect only if and when * * * [Chapter 629] takes effect."

Chapter 629 contains 45 sections, many of which amend other parts of the code in matters not material to this controversy. Section 44 provides as follows:

"(1) Except as provided in subsections (2) and (3) of this section, this Act takes effect on January 1, 1961.

"(2) The Chief Medical Investigator may be appointed prior to January 1, 1961, and he may take any action prior to January 1, 1961, that is

necessary to enable him to exercise on January 1, 1961, the duties, functions and powers given to him under this Act.

"(3) The Governor may appoint the members of the State Medical Investigation Advisory Committee prior to January 1, 1961, and the committee may make recommendations prior to January 1, 1961."

It is apparent that ORS 204.005 remains the law until the effective date of its amendment by Chapter 628, § 1, quoted above. The only question is when did the legislature intend the amendment of ORS 204.005 to take effect. Until it has been amended, ORS 204.005 requires the election of coroners at each general election.

■ When a court is called upon to construe a statute, the first paramount rule, and the statutory law of this state, is that the court must declare what is in terms or substance contained in the statute under scrutiny, and neither add to nor take from the language employed by the legislature unless a manifest absurdity would result from a literal interpretation. See ORS 174.010; *Fullerton v. Lamm,* 177 Or 655, 670, 163 P2d 941, 165 P2d 63.

■■ If the language used in the statute is plain and understandable, then legislative intent must be gathered from the language used and there is no need to resort to rules of statutory construction. *Feero et al v. Housley et al,* 205 Or 404, 415, 288 P2d 1052, and cases cited therein. When the language is not so plain and understandable that it speaks for itself, as is the situation here, the legislative history becomes relevant. 2 Sutherland, Statutory Construction 481, § 5001. In addition to such raw material of legislative history as previous drafts of house and senate bills, the courts

may consider other written evidence such as committee reports, minority reports, minutes of committee meetings, and the like. 82 CJS 745, 746, Statutes § 354.

 In the case at bar, it is proper to take into consideration the policy and purposes of the legislation, and to consider, if two constructions of the language are equally possible, which of them will attain the purposes announced in the acts themselves. *Swift & Co. and Armour & Co. v. Peterson,* 192 Or 97, 109, 233 P2d 216; *Banfield v. Schulderman,* 137 Or 167, 178, 296 P 1066, 298 P 905, 89 ALR 504. In this duty, we are bound to give effect to the main purpose expressed by the legislation if it can be done. *City of Portland v. Bingham et al,* 209 Or 575, 307 P2d 492. We are required to harmonize apparent conflicts within a statute if it is possible to do so. *Gilbertson et al v. Culinary Alliance et al,* 204 Or 326, 282 P2d 632.

The conflict in the two chapters lies between the expressed intent of Chapter 629 to put the medical investigation system into operation on January 1, 1961, and the expressed intent that Chapter 628 not take effect until Chapter 629 becomes law. This conflict may have been accidental in the closing hours of the 1959 Legislative Assembly, as suggested by the county clerk. On the other hand, the Legislative Assembly may have acted advisedly. There is no evidence to support either inference.

In the general elections of 1956, the office of county coroner was removed from the list of constitutional offices and was made subject to legislative regulation. All coroners holding office by virtue of the 1956 election and later elections therefore hold subject to the office being terminated at the end of any term as may

be prescribed by law. Oregon Constitution, Art VI, §§ 6, 7 and 8, as amended November 6, 1956.

In the general election of 1956, a coroner was elected for Lane County for a four-year term. He qualified and assumed the office on January 7, 1957. His term expires on January 2, 1961. Oregon Constitution, Art II, § 14.

In 1957 the Legislative Assembly commissioned an interim committee to study and report its findings on the entire matter of the investigation of deaths. A comprehensive report was filed in 1958. In 1959 the Legislative Assembly undertook legislation to implement the recommendations of the committee.

It is apparent from reading Chapters 628 and 629 that they were intended to bring under a new system of medical examiners all of the investigations and most of the other functions formerly performed by coroners in counties having less than 400,000 persons. It is equally apparent from the legislation that the intent was to accomplish these reforms as soon as possible. See particularly Chapter 629, § 44 (2) and (3), Oregon Laws 1959. The original bills had provided for an effective date of January 1, 1960, but this date was changed to January 1, 1961, for reasons which are not discernible from the record.

The Secretary of State interprets the change of the effective date of Chapter 629 to postpone the operation of the new legislation until after the general elections of 1960 as evidence of a legislative intent to permit the offices to be filled at the 1960 election.

The county clerk has taken the view that no such intent should be read into the Act. To do so would be to postpone the effective operation of the Act for most counties until January 4, 1965.

The county clerk argues that the legislature intended to eliminate the office of coroner in those counties to which Chapter 628 applies as soon as terms of office existing on January 1, 1961, expire. In 21 of the counties, these terms of office will expire the next day and a new term of office would begin if Chapter 628 has not abolished the office. In other counties, where the incumbent coroner may have been elected to a four-year term in the 1958 general election, the term of office in existence on January 1, 1961, would continue until 1963 when the automatic termination would occur.

The circuit court, mindful of the expressed intention to put the medical examiner system into operation on January 1, 1961, was aware of the fact that this could not be done in any realistic way with 21 coroners commencing new four-year terms the next day. It held that the legislature must have intended to exclude the commencement of any new terms of office after the effective date.

The circuit court concluded from reading the two chapters of the 1959 Laws that the Legislative Assembly could not have intended to postpone the operational date of the new system until 1963 for some counties and 1965 for others because to do so would be to require the taxpayers to carry an idle Chief Medical Investigator and staff for several years while the renewed tenure of existing coroners' offices ran its course.

The circuit court, in a well-reasoned opinion, said:

"Section 2 of Chapter 628, uses the following language:

" 'The term of office of a coroner elected or appointed before the effective date of this Act *may continue* until the completion of the term

for which he was elected or appointed.' (Emphasis supplied.)

"The use of the words 'may continue' clearly indicates legislative intent that the term 'elected' is to be applied to those coroners in office at the time the Act was considered and passed. A coroner elected in the November 1960 election would enter a 'new' term on January 2, 1961, one day following the effective date of the Act. He would have no term 'to continue' as the office would be abolished the previous day."

■ When the statutes in question are read as a whole, as they must be, *City of Portland v. Duntley,* 185 Or 365, 203 P 2d 640, it is apparent that the circuit court reached the correct conclusion.

Returning to the language actually used by the legislature in Chapter 628, we find that the effective date of that chapter (which is the one that eliminates the election of coroners) was stated in these words: "This Act shall take effect only if and when Senate Bill No. 259, introduced in the Fiftieth Legislative Assembly, takes effect."

It is obvious that the Legislative Assembly, aware that "companion" bills sometimes fail of passage in the final days of the session, did not want to abolish the office of coroner until and unless the companion bill creating the new system became law. This intent is so clear that it cannot be made plainer by statutory construction. The intent to make the enactment of Chapter 628 contingent upon the enactment of SB 259, now Chapter 629, was the only intent expressed or implied. When so understood, it is clear that the Legislative Assembly intended to eliminate the election of any new coroners after Chapter 629 became law because to do so would defeat the very purpose

of the legislative scheme which was to transfer the duties of coroners to the new system.

When Chapter 628, with its elimination of the election of any new coroners, is seen to be contingent upon the enactment into law of its companion chapter, the internal conflicts between the two statutes evaporate. Chapter 629 was enacted into law, signed by the Governor, and became the law of this state on August 5, 1959, at the time all other laws enacted by the Fiftieth Legislative Assembly became law unless otherwise provided. It is true that Chapter 629 did not immediately place in operation the medical-investigator system, because by its terms it suspended the operation of the complete system until January 1, 1961. It did, however, become law and as such contained certain provisions which took effect immediately.

To hold that Chapter 628 was dormant for all purposes until Chapter 629 became effective for all purposes would be to hold that the legislature intended to create by Chapter 629 a comprehensive system to replace coroners, complete with a highly paid director and staff, but with practically nothing for them to do for two years. Such a construction would frustrate legislative intent, and is not demanded by the language used elsewhere in the statutes.

The judgment of the circuit court is affirmed.

Neither party to recover costs.