## JAYNE *v.* STATE TAX COMMISSION

Louise Jayne, Portland, submitted a brief for plaintiffs.

Carlisle B. Roberts, Assistant Attorney General, Salem, submitted a brief for defendant.

Decision for defendant rendered January 22, 1965.

PETER M. GUNNAR, Judge.

This is an appeal from defendant's Opinion and Order No. I-64-12, affirming an assessment of additional personal income taxes against plaintiffs for the calendar year 1960. Defendant demurred to plaintiffs' complaint and the decision on this demurrer is decisive.

Plaintiffs sold a capital asset in 1960. Within the statutory time, they reinvested the sale proceeds, including profit, in a personal residence in Oregon and

in the bonds of Ashland, Oregon and Clackamas County School District 62C. Plaintiffs claimed special treatment of the capital gains realized in the 1960 sale. Defendant denies such special treatment.

The issues raised by the demurrer are whether either a personal residence or municipal bonds qualify as "qualifying investments" for capital gain treatment under ORS 316.420(1).

The material parts of ORS 316.420(1) read:

"(1) A qualifying investment under ORS 316.414 is:

"(a) Real property in Oregon.

"(b) Investment in a corporation determined to be a qualifying corporation under ORS 316.426 on the date the investment is made."

ORS 316.426 directs the tax commission to determine qualification "using the last taxable year for which the corporation has filed a return under Oregon tax law."

■ This court has already allowed special treatment of capital gains invested in a personal residence in *Christianson v. Commission*, 2 OTR 43 (1964); *reversed,* 240 Or 504, 402 P2d 743 (1965). However, the instant case so clearly points up the statutory construction problems presented that a discussion of both issues will clarify the decision in each.

In the *Christianson* decision this court set forth the arguments concerning special treatment of capital gains invested in a personal residence as follows:

"The arguments in favor of special treatment are:

"(1) That ORS 316.420 is a definition statute defining the term of art 'qualifying investment' and the legislature can define the term in any way it sees fit;

"(2) That the plain meaning of the term 'Real property in Oregon' includes any real property, including a personal residence;

"(3) That 'Real property in Oregon' is not modified by the words 'Investment in', as are all the other types of 'qualifying investment';

"(4) That the court cannot add words to the statute;

"(5) That the bill as originally drafted and presented to the 1959 House Committee on Taxation defined 'qualifying reinvestment' and did not precede any of the subparagraphs from (a) through (e) with 'Investment in' and it later added 'Investment in' to all but subparagraph (a);

"(6) That, though exemption statutes (if this is one) are to be strictly construed, any ambiguities are to be resolved in favor of the taxpayer; and

"(7) That the homebuilding industry is particularly favored in Oregon because it increases the local tax base, it consumes our number one product, lumber, and it provides jobs for Oregonians when it is conducted in Oregon.

"Defendant's arguments that special treatments should not be allowed are:

"(1) That personal residences are not deemed 'investments' in tax statutes, where that term generally is used to mean assets acquired for profit-making purposes;

"(2) Under both state and federal tax laws, personal residences are not entitled to depreciation, deductions for loss, and other business charges, and personal living expenses are generally not deductible;

"(3) That the 1959 capital gains act, Oregon Laws 1959, chapter 591, speaks exclusively of profit-making investments and is intended primarily to encourage such investments in the state;

"(4) That ORS 316.420 does not define 'qualifying investment', but rather sets forth those investments, using the word 'investment' as it is

usually used in the tax law, which 'qualify' under this act;

"(5) That such special treatment is like an exemption from tax and should be strictly construed;

"(6) That the statute itself puts the burden on the taxpayer to bring himself within the terms of the statute for special treatment; and

"(7) That the legislative history indicates a concern with only investments for profit.

"This case has been very ably briefed by counsel and each of the foregoing propositions standing alone has been fully supported by appropriate authority. I will not extend this opinion by a display of erudition gleaned from the briefs. The problem is not accuracy of the arguments but their application to this statute."

The arguments in favor of allowing municipal bonds to qualify are:

(1) The purpose of the statute is to encourage investment in Oregon.

(2) The legislature would not penalize municipal corporations.

(3) Evidences of indebtedness are investments within the meaning of ORS 316.420(1)(b). *Field Emission Corp. v. Commission,* 1 OTR 243 (1962).

Defendant's argument against special treatment is that a municipal corporation cannot qualify under ORS 316.426(3) because it does not file tax returns or pay taxes. Conceding that the legislature probably would treat municipal corporations favorably, if it considered the problem, the commission contends that the failure to "qualify" municipal corporation bonds is a "legislative oversight" which neither this court nor the commission can cure.

The basic issue is whether this court properly can and should rewrite a statute. Stated another way, at

what point does a court properly construe a statute beyond its clear language? This question particularly concerns this court. More frequently than most courts it is called upon to interpret new statutes. As here, the statutes are often peculiar to Oregon. No other state has a capital gains treatment law like ORS 316.406 to 316.450. The proper application of such statutes is determined by the so-called rules of construction.

The pervading rule of construction is that courts are bound to find legislative intent. All other rules of statutory construction are largely legal makeweights which courts have developed over the years to justify their visceral determinations of what the legislature intended. The rules themselves establish this conclusion. Read together they are contradictory and confusing. A few examples suffice to illustrate this conclusion:

If the language used is plain and understandable, legislative intent must be gathered from the words used and there is no need to resort to rules of statutory construction. *State ex rel. Appling v. Chase,* 224 Or 112, 116, 355 P2d 631 (1960). But courts should look to all statutes relating to the same subject matter in determining the intent of the legislature. *In re Holmlund's Estate,* 232 Or 49, 67, 374 P2d (1962). Words of common use are to be given their natural, plain and obvious meaning. *Blalock v. City of Portland,* 206 Or 74, 80, 291 P2d 218 (1956). But in order to justify interpretation of a statute on the grounds of ambiguity it is not necessary that the ambiguity appear in the particular phrase or clause under consideration. *State v. Rawson,* 210 Or 593, 609, 312 P2d 849 (1957). The court is not authorized to rewrite a statute or to ignore the plain meaning of unambiguous words to correct

legislative action. *Lane County v. R. A. Heintz Const. Co.,* 228 Or 152, 157, 364 P2d 627 (1961). But a thing may be within the letter of the statute and yet not within the statute because it is not within its spirit or within the intention of its maker. *Swift & Co. v. Peterson,* 192 Or 97, 109, 233 P2d 216 (1951). A cardinal rule is to ascertain legislative intent as to what purpose was to be served or what object was designed to be obtained. *Cudd v. Aschenbrenner,* 233 Or 272, 277, 377 P2d 150 (1962). The court cannot insert into a statute that which has been omitted. *Cook v. Hill,* 224 Or 565, 568, 356 P2d 1067 (1960). But when legislative intent has been ascertained, it should be given effect, although literal meaning of words is not followed. *Peters v. McKay,* 195 Or 412, 440, 238 P2d 225, 246 P2d 535 (1952). Nonetheless, words which have a well-defined common meaning are to be given that meaning. *Boling v. Nork,* 232 Or 461, 465, 375 P2d 548 (1962). Professor Llewellyn has expanded the list of opposing rules of construction to 28 "Thrusts" and "Parrys" and another 19 "Thrusts" and "Counterthrusts." Karl N. Llewellyn, *The Common Law Tradition, Deciding Appeals* (Boston 1960), pp 521-35.

It is obvious that a court can justify with proper and recent precedent any position which it determines to take. No one can say it is wrong because an appropriate selection from the so-called rules of statutory construction will justify any reasonable conclusion.

A court's philosophy dictates its conclusions and its supporting precedent among the rules of construction. Its philosophical predelictions generally determine direction rather than position. Its philosophical choice affects the position taken in each case, more or less, depending upon the case and the firmness of the court's predeliction to a defined, established philo-

sophical direction. Despite authoritative precedent admonishing the contrary, a court can invade the legislature's province as deeply as it wishes, upon the ground of harmonizing the statute with the other statutes on the same subject matter, as the court sees such harmonization. Or the court can take the more conservative approach of leaving legislative matters to the co-equal legislature by refusing to rewrite a statute in the image of its understanding of conformity or statutory spirit. Either course of action, or any intermediate course, is entirely lawful and within judicial propriety.

In tax cases courts should adopt a conservative approach to statutory construction. They should be most circumspect in rewriting, "harmonizing," or correcting the tax statutes. This court reaches this conclusion on the following reasons which it considers sound both in the law generally and in the tax law particularly.

Law and stability are almost synonymous to the layman. The law's stability, consistency, and predicability benefit the courts, the bar, and all citizens.

Tax law needs stability, consistency, and predictability more than other legal fields. While various laws affect a number of our citizens, almost every citizen must self-assess his own income tax and some other taxes. To do so, each taxpayer must read and interpret the law and compute his own tax at his peril of interest, penalties, and possible incarceration. Every businessman and his lawyer must interpret the tax laws immediately upon their enactment to plan intelligently for the business' future. Under these circumstances the courts have a peculiar responsibility to avoid complicated or esoteric rules of construction which alter the plain meaning the layman understands

from reading a tax statute. The law can and does expect the average citizen to understand the plain meaning of words as they are used in his everyday world. The layman legislator uses these words when he writes his tax laws for the layman taxpayer. Practically and legally the words which the layman legislator uses should mean what the layman taxpayer understands them to mean. Furthermore, judicial harmonization, acting retroactively, penalizes the conscientious taxpayer who has complied with the statute's plain meaning.

Secondly, taxation has always been a peculiarly legislative matter. Through its control of the purse-strings Parliament first asserted and then confirmed the people's voice in their government's affairs. The power to introduce tax legislation is recognized as the peculiar prerogative of the legislative branch closest to the people, the House of Representatives. The courts have consistently recognized legislative pre-eminence in taxation. When a court departs from the plain meaning of a tax statute, its decision tends to alter the tax law from the scheme which the legislature in fact adopted. In this case, the interpretation of "real property in Oregon" as "investment real property in Oregon" alters the capital gains law which the legislature actually adopted. The legislature may intend lack of "harmony" or special treatment of a class. A court's construction of language to arrive at what is "harmonious" in its judicial judgment, discretion, and philosophy as a substitute for what the statute actually says changes the tax incidence. Such construction may well defeat the very legislative intent and purpose which the court has invoked to support its judicial tinkering. Though actively molding our present law in civil rights, torts, and other fields,

the judiciary has consistently deferred to the legislature for the determination of how and to what extent our citizens shall be taxed, exempted from tax, or specially treated under our tax laws. *Crawford v. Linn County,* 11 Or 482, 491, 5 Pac 273 (1884); *Cf., State ex rel Overhulse v. Appling,* 226 Or 575, 586, 361 P2d 86 (1961); *Wittenburg v. Mutton,* 203 Or 438, 446, 280 P2d 359 (1955); *Jarvie v. Commission,* 1 OTR 1, 5-6 (1963). Because taxation is peculiarily a legislative matter, the courts should continue to refrain from harmonizing or altering the language of tax statutes.

Thirdly, the tax laws receive a peculiar and constant legislative attention. The size of budgets and the tax burden focus the taxpayer's complaints and the administrator's needs on the hapless legislator. The result is constant, session-by-session amendment, reconsideration, and modification of tax statutes. If the courts stick to the statutes' plain meaning and this conservative approach results in a situation which the legislature did not intend, almost immediate legislative correction is probable. Particularly aware of its prerogative in the tax field, the legislature is unlikely to allow an unintended meaning to stand because the courts have said, "It's the law."

Finally, as discussed in *Christianson, supra,* the separation of powers of our three coordinate and equal branches of government is an underlying but compelling reason for judicial conservatism. Despite current trends to what euphemistically are called as courts of "Grand" or "Classic" style (see Llewellyn, *op cit.*), our courts still are responsible primarily for declaring what the law is and constitutionally can be and not what the law should be. Under the separated powers the legislature determines what the law should

be, limited only by the court's powers to determine what it constitutionally can be. Little restrained in the exercise of their powers, courts should be the most self-restrained in their application. The legislature is far better prepared and constituted to determine when it should depart from its over-all pattern to provide inconsistent or unharmonious consequences than is a judge, secure and cloistered in his chambers. The legislators are still in the arena of everyday life. Their number and interests breed compromises and create the inconsistency which gives reality to public policy.

This court finds the foregoing reasons compelling in its treatment of tax cases. They compel it to avoid construing statutes unless there is a patent ambiguity. They compel it to construe statutory words in their ordinary sense rather in some nonliteral fashion dictated by a subjective conception of the proper statutory scheme. This court concludes that it should sound forth a tax statute's plain meaning and leave harmonizing to the multi-voiced legislative choir.

Perhaps this conclusion is fostered by the specialized position in which this court sits. Dealing only with tax questions, it is deeply aware that its decisions affect not only the named litigants but every Oregonian this tax year. Our tax laws are complicated. Our tax burden is heavy. Those charged with the interpretation of that complicated law levying that heavy burden should not compound its complication or its weight by uncertainty arising from subjective judicial harmonization and amendment.

For the foregoing reasons this court held in *Christianson, supra,* that a reinvestment of capital gains in a personal residence in Oregon qualified that capital gain for special treatment. It reached this conclusion by interpreting "Real property in Oregon" in its

plain and natural meaning to include all Oregon real property. It refused to read into this statute any statutory scheme or hidden legislative meaning that limited "real property in Oregon" to "investment real property in Oregon." It confirms that conclusion and expressly incorporates its earlier reasoning in this case.

■ Applying consistently the same reasoning to the second issue here raised, it concludes that reinvestments in municipal bonds does not qualify a capital gain for special treatment under ORS 316.406 to 316.450. For an investment in any corporation to qualify a prior capital gain for special treatment, the corporation must be "determined to be a qualifying corporation under ORS 316.426 * * *." Under ORS 316.415 the State Tax Commission must make this determination in the first instance. In making this determination the commission is directed to use "the latest taxable year for which the corporation has filed a return under Oregon laws." Municipal corporations, including the city of Ashland and the Clackamas County School District, are not required to file returns or to pay a tax. Without returns from which the commission can compute the salary and property factors under ORS 316.426, it cannot determine such qualification. Therefore, such municipal corporations cannot qualify for reinvestment. Plaintiffs reinvested their capital gain in municipal bonds without any clear statutory authority for deeming them qualifying investments. In so doing they took the chance that the courts would "clarify" the law in their favor—and lost.

This approach may seem mechanistic jurisprudence. Most lawyers and taxpayers probably would conclude that, if the legislature had thought of this problem, it would have included municipal corpora-

tions as qualifying corporations under ORS 316.420. This court and the tax commission concur in this conclusion. Under the rules of construction legal minds as unagile as this court and the commission's chief counsel can find an ambiguity and proceed to construe that ambiguity to include these municipal corporations. But an inadvertent drafting error does not authorize this court to rewrite the statute. Consistency compels it to avoid such temptations and to leave the cure to the present legislature.

In summation, this court finds that plaintiff's investment in a personal residence qualifies as "Real property in Oregon" under ORS 316.420(1)(a), but that their investments in the bonds of the Ashland City Hospital and Clackamas County School District 62C do not qualify as investments under 316.420(1)(b). Defendant's counsel shall prepare and submit a decree in accordance with this decision under Rule 38, alowing costs to neither party.