## MRS. SMITH'S WEST COAST PIE CO. *v.* DEPARTMENT OF REVENUE

Joseph J. Hanna, Jr., Cake, Jaureguy, Hardy, Buttler & McEwen, Portland, represented plaintiff.

Alfred B. Thomas, Assistant Attorney General, Salem, represented defendant.

Decision for defendant rendered May 18, 1971.

CARLISLE B. ROBERTS, Judge.

The question before the court requires interpretation of ORS 308.250, indexed in the Department of Revenue's compilation of property tax statutes as the "Processors' Law." The pertinent parts read as follows:

"(1) All personal property not exempt from taxation shall be assessed at its true cash value as of January 1, at 1:00 a.m.

"(2) Except as provided in ORS 307.325 [an exemption for farmers], if the assessment covers any of the items listed in subsection (3) of this section, or any processed product thereof, in the hands of a farmer, producer or processor while being transported to or held in storage in a public or private warehouse, the assessor shall cancel the assessment in whole or proportionate part on receipt of sufficient documentary proof that the personal property so assessed actually was transported or shipped to another point before May 1 of the year of assessment. ° ° °

"(3) The items referred to in subsection (2) of this section are as follows:
"* * * * *
"(d) Fruit."

The plaintiff is an Oregon corporation, having its principal place of business in McMinnville, Oregon. Before the assessment date, January 1, 1967, it had purchased from packers 21,120 pounds of frozen peaches, in containers holding 30 pounds each, which,

on the assessment date, were stored in a warehouse of the North Pacific Canners and Packers in Portland, Oregon. The peaches had been purchased by the packers from growers. The packers then sorted, washed, sliced and froze the fruit, adding sugar as a preservative at the time the peaches were packed in the 30-pound containers.

The complaint alleges that on or before May 1, 1967, the plaintiff had shipped all of the frozen peaches from Portland to its warehouse and plant operation in McMinnville. While the complaint states that, "at all times relevant," the frozen peaches were in containers and not "processed" by the plaintiff into the finished product of frozen fruit pies, at the trial the testimony of the plaintiff's vice-president and general manager made clear that the plaintiff sought to maintain at the McMinnville plant only a 30-day supply of frozen fruit to fill existing orders, and these supplies were used in pies within 34 days after delivery from Portland.

The plaintiff made timely application to Multnomah County for cancellation of the assessment of this personal property under subsection (4) of ORS 308.250. The denial by the assessor was appealed to and affirmed by the Department of Revenue pursuant to ORS 306.520. Appeal was then made to the Tax Court from the Department's Order No. VL 69-495.

The parties agree that two issues must be resolved:

(1) Under the facts, was the plaintiff a "processor" within the meaning and purpose of ORS 308.250? (There was no contention that the plaintiff was a farmer or producer, as those terms are used in the statute.)

(2) If the plaintiff qualifies as a "processor," was its inventory of frozen peaches "transported or shipped to another point" before May 1, 1967, within the meaning of the statute, requiring cancellation of the assessment of such personal property?

The legislative intent in the enactment of the statute must be found and followed. As an aid to construction, a review of the statute's history is pertinent. *State ex rel Appling v. Chase*, 224 Or 112, 355 P2d 631 (1960). The genesis of the statute above quoted appears to be the "Report of the Interim Commission on State and Local Revenues," January, 1939 (prepared pursuant to HJR No. 21, Thirty-ninth Legislative Assembly) where that commission recommended (page 14) that the dates and periods for assessing property and collecting taxes be shifted to conform to a fiscal-year basis for all tax levies, to speed up administrative processes and facilitate tax payments. On page 16 the report states:

> "This plan involves: (1) changing the date of assessment of property from March 1 to January 1, with sessions of boards of equalization beginning in May instead of August; (2) submission of budgets and determination of tax levies in May and June, rather than from June to November as variously in effect under present statutes; (3) shifting the initial and principal due date of property taxes, now falling at March 15, to November 5 next preceding. * * *"

This proposal, originally introduced as House Bill No. 482 in 1939, was eventually enacted as Or L 1941, ch 440 (HB 107), effective January 1, 1942. In the interim, it apparently had been learned that while farmers and processors were largely able to dispose of stocks of grain, hay, fruit, vegetables, nuts, hops, wool

and fish before March 1 of the year of assessment, large stocks of these goods were generally on hand as of January 1, and the change in assessment date would have the effect of imposing a new tax. Consequently, § 110-348, OCLA, was amended. Prior to the drafting of House Bill 107, that section read:

"All personal property not exempt from taxation shall be valued at its true value in cash, as defined in section 110-335 hereof, and it shall be the duty of each assessor to value all improvements on claimed United States lands within his county as personal property."

As originally placed in House Bill No. 107, the amended section read:

"Sec. 110-348. All personal property not exempt from taxation shall be assessed at its true cash value as of January 1, at the hour of 1 o'clock a.m.; provided, that where any such assessment covers grain, hay, fruit, vegetables, nuts, hops, wool or fish, or any processed product thereof in the hands of the first processor while being transported to or held in storage in a public or private warehouse, the assessor shall cancel such assessment in whole or proportionate part on receipt of sufficient documentary proof that the personal property so assessed actually was shipped to a point or points outside this state on or before March 1 of the year of assessment. No such cancelation shall be made unless such proof be furnished to the assessor on or before April 1 of such year."

The significance of the amended section, both to legislators and to interested parties, is manifested by the numerous amendments made to the initial proposal. Each amendment, with one exception, tended to enlarge the area of exemption. "First processor" was deleted and in its place was inserted "a farmer, producer or of a processor." "A point or points outside

this state" was amended to read "another point."
"March 1" and "April 1" were amended, respectively,
to "April 30" and "May 15." An additional category
was added: "* * * and provided further, that similar
cancelation of assessment shall apply to livestock on
feed and shipped for slaughter to a point either with-
in or without this state on or before April 30, of the
year of assessment." Only one amendment was re-
strictive; i.e., "actually was shipped" was amended to
read "actually was sold and transported or shipped."

The act has been further modified as follows: Or L
1947, ch 381, § 1, added "or poultry held for sale for
human consumption" to the list of products coming
within the statute. Or L 1953, ch 349, § 1, added "seed"
to the list of products, retroactively to January 1,
1953. It also deleted the words "sold and transported,"
leaving "transported or shipped." Or L 1959, ch 553,
§ 1, reorganized the section to put the list of exempt
products in subsection (3) and added thereto "butter,
cheese and evaporated, condensed or concentrated
milk."

Or L 1965, ch 429, modified the act by making a
necessary reference to ORS 307.325, added by the 1965
act. The new section read:

"The items of personal property described in
subsection (3) of ORS 308.250 which, on the assess-
ment date, are owned and in the actual or construc-
tive possession of the farmer who produced them
or who has procured them for use or consumption
in his farm operations, shall be exempt from tax-
ation."

This outright exemption for the farmer makes inclusion
of the word "farmer" in ORS 308.250 unnecessary, but,
by its enactment, it makes clear that the legislature

had no intent fully to exempt "producers" or "processors."

The vital words and phrases, "producer," "processor," "processed product," "transported or shipped to another point," are not defined in the statute and their meanings have often been the subject of controversy. The court's primary object must be to ascertain the legislative intent in the use of this language. One cardinal rule of construction is that statutes providing exemption from taxation must be strictly construed; i.e., the exemption must not be enlarged by judicial fiat. *Willamette Univ. v. Tax Comm.*, 181 Or 244, 344, 181 P2d 130 (1966); *Keyes v. Chambers*, 209 Or 640, 307 P2d 498 (1959); *Ore. Stamp Soc. v. Commission*, 1 OTR 190 (1963). The legislative history of the statute indicates that the legislature sought only to exempt those inventories which, in the usual course of business, were in the processor's possession on January 1 but would be customarily disposed of by May 1.

Only the Legislative Assembly can provide tax exemptions. Ideally, it should express intent clearly and directly. Sometimes it does. (For example, see ORS 307.325, quoted above.) But many tax exemptions are phrased in language which reflects the tug and pull of conflicting views and ultimate compromise. Further, legislators, being human, cannot foresee every factual variable to which the principle inherent in the new act will be subjected. The court must then thread a course through the conflicting rules of statutory construction, always steering by the beacon of "legislative intent." The rule of *stare decisis* then becomes most important, because the courts have a duty of consistency in interpretation, not only as a guide to law-abiding citizens but also to give to the legislature the clearest possible insight of the area of conflict in

case legislative review appears necessary. *Multnomah County v. Sliker,* 10 Or 65 (1881).

■■ Was plaintiff a "processor" within the intent of the statute? A processor has been defined as one who is in the business of converting any agricultural commodity into a marketable form; freezing has been held to be processing. *Manning's Famous Foods, Inc. v. Commission,* 3 OTR 249, 251 (1968), and cases cited therein. It is common knowledge that there are many steps in the conversion of raw food products into marketable form but, as indicated above, there appears to have been no intent by the legislature to give a blanket exemption to all the persons who play a part in these activities, although the word "processor" and its derivative, "processing," admittedly have a broad range of meaning.

The court, in *Manning's Foods, supra,* laid down a rule:

> "In order to be entitled to an exemption as a processed product of the original raw product, the former should be substantially composed of and bear a substantial identity to the original raw product. It does not have to be the same as the original product and would not lose its identity merely from the addition of liquids, seasoning or coloring. Neither does the processed product lose its identity when the original fruit or vegetable is converted into a liquid and sold in that form." (3 OTR at 253.)

The court then goes on to deny the exemption to an owner of "already processed goods" such as macaroni, crushed pineapple, corn meal, rice, spaghetti, sugar and flour which were converted into tamales, soups, stews, fricassees, fruit and meat pies, macaroni and cheese and ravioli. The court adopted the defendant's

view that the plaintiff was a processor of "already processed products" rather than the processor of the raw products listed in the statute. (This decision appears to have superseded *Bama Co., Inc. v. Wiley W. Smith,* Cir Ct, Mult Co, Or, No 259-876, Jan 5, 1959, and 29 Op Atty Gen 237, No. 4575, Sept 1, 1959. It is in accord with 28 Op Atty Gen 256, No. 3975, Mar 18, 1958.)

■ The plaintiff in the present case may be a processor, but there is no testimony in the record to that effect. The record shows that the peaches had been processed by another entity prior to their acquisition by the plaintiff sometime before the assessment date, and the next activity relating to them, apart from the transportation between the warehouse in Portland and the plant in McMinnville, was to use them in the preparation of fruit pies to be sold at wholesale. Thus, the plaintiff, if entitled to the designation "processor," was merely the processor of an already processed product and its own product was too remote from the raw product to be within the statute under the rule of *Manning's Famous Foods, Inc. v. Commission, supra.* Before May 1, the exemption was lost by "the commingling of the processed products into items bearing little or no resemblance to the original raw product." *Manning's, supra,* pp 252-253.

This conclusion is based on the assumption of the court that the steps taken by the plaintiff to convert the frozen peaches and other necessary ingredients into pies do not constitute "processing" as envisaged by the statute. Even if more complete testimony would prove the plaintiff was a processor, it fails under the second issue presented, i.e., were the frozen peaches "transported or shipped to another point before May 1 of the year of assessment"?

As stated above, the plaintiff had purchased peaches, frozen in 30-pound cans, stored them in a Portland cold storage warehouse prior to the assessment date, and then, at intervals, carried portions of the inventory in trucks to McMinnville, maintaining a 30-day supply at the baking plant to fill existing orders. The distance from Portland to the McMinnville plant was and is 45 miles.

In the case of *Diamond Fruit Growers v. Commission*, 3 OTR 255 (1968), the plaintiff shifted canned apples and pears from one warehouse to another, the longest distance between warehouses being seven miles. The argument was made that, with the deletion of the word "sold" from the original act, exemption could be given to a processor by the requirement that the property be transported or shipped to another "point." The plaintiff relied in part on an opinion of the Attorney General (27 Op Atty Gen 168, No. 3242, Dec 7, 1955) interpreting ORS 308.250 to hold that the deletion of the word "sold" enlarged the provision for cancellation of assessments and made transportation or shipment to another point the only qualification. In its decision in *Diamond Fruit Growers, supra,* at page 258, the court said:

> "If the opinion of the Attorney General means that the only requirement for cancellation is that the goods be stored in a warehouse on January 1 and moved to another 'point' before May 1, then the opinion is not persuasive. The results would be absurd. * * *"

And on page 259, the court stated:

> "A statute should not be construed so as to produce an unreasonable result. [Citing cases.]
> "* * * When the legislature required the goods to be transported or shipped to another point it

> must have intended that the goods pass out of the possession and control of the processor. Otherwise there would be no reason to allow the cancellation."

In the present case, in making the move from Portland to McMinnville, the goods did not pass out of the possession and control of the plaintiff (assuming that it could qualify as a processor). The difference between transportation of seven miles as in the *Diamond Fruit Growers* case, *supra,* and 45 miles in this case would not affect the principle of the decision.

■ The *Diamond Fruit Growers* case was appealed to the Oregon Supreme Court and affirmed in 254 Or 619, 463 P2d 359 (1969). Plaintiff points out that the Supreme Court concurred only "in that portion of the Tax Court's opinion" which held that construction of the statute to produce an absurd result would not be sanctioned and that plaintiff's contention that transportation of its canned fruit from one warehouse to another "for whatever purposes" is not sufficient to meet the requirement that the property "was transported or shipped to another point." However, the Supreme Court did not overrule the principle enunciated by the Tax Court in the *Diamond Fruit Growers* decision, i.e., that the legislature must have intended that the goods pass out of the possession and control of the processor before May 1 if it is to obtain an exemption. Under the doctrine of *stare decisis,* this court must be guided by that rule. The plaintiff's argument, based on "transported or shipped to another point," is therefore unacceptable.

Under the facts as found, the plaintiff did sell the bulk of its pies, containing the frozen peaches, before May 1. However, as stated above, pies, not peaches, were sold. The potential exemption was lost when the

processed product was commingled in such a way as to lose its identity, bearing little or no resemblance to the original raw product. *Manning's, supra,* pp 252-253.

The defendant's Order No. VL 69-495 is affirmed.